## 25-11185

# United States Court of Appeals
## for the Eleventh Circuit

—————◆—————

PUBLIX SUPER MARKETS, INC.,

*Plaintiff - Counter Defendant - Appellant,*

– v. –

ACE PROPERTY AND CASUALTY INSURANCE COMPANY, AMERICAN
GUARANTEE & LIABILITY INSURANCE COMPANY, FIREMAN'S FUND
INSURANCE COMPANY, THE HARTFORD FIRE INSURANCE COMPANY, INDIAN
HARBOR INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, *et al.*,

*Defendants – Appellees,*

GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK, GREAT AMERICAN SPIRIT INSURANCE COMPANY,

*Defendants - Counter Claimants – Appellees.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, CASE NO: 8:22-cv-02569-CEH-AEP

## APPELLANT'S OPENING BRIEF

Kenneth H. Frenchman
Alexander M. Sugzda
Jason D. Meyers
COHEN ZIFFER FRENCHMAN & MCKENNA, LLP
1325 Avenue of the Americas, Floor 31
New York, NY  10019
(212) 584-1890

Robert Friedman
FRIEDMAN P.A.
340 Royal Poynciana Way, Suite 317-202
Palm Beach, FL  33480
(561) 800-2110

*Counsel for Plaintiff - Counter Defendant - Appellant*

**No. 25-11185**

**Publix Super Markets, Inc. v. ACE Property and Casualty Insurance Company**

**Certificate of Interested Persons and
Corporate Disclosure Statement**

The undersigned counsel of record for Plaintiff-Appellant, in compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, certifies that the following listed persons and parties have, or may have had, an interest in the outcome of this appeal:

ACE Property and Casualty Insurance Company

American Financial Group, Inc.

American Guarantee & Liability Insurance Company

Central and Second Insurance Company Morning Song, LLC

CHM Landing Station, LLC

Chubb Limited

Cohen Ziffer Frenchman & McKenna LLP

Frenchman, Kenneth H., Esq.

Friedman P.A.

Friedman, Robert H., Esq.

Great American Assurance Company

Great American Insurance Company of New York

Great American Spirit Insurance Company

No. 25-11185

**Publix Super Markets, Inc. v. ACE Property and Casualty Insurance Company**

Hartford Insurance Group, Inc.

Honeywell, Charlene Edwards, Sr. U.S.D.J.

Indian Harbor Insurance Company

Liberty Insurance Underwriters, Inc.

Liberty Mutual Fire Insurance Company

Liberty Surplus Insurance Corporation

Meyers, Jason D., Esq.

National Fire & Marine Insurance Company

Navigators Specialty Insurance Company

Ohio Casualty Insurance Company

Porcelli, Anthony Edward, U.S.M.J.

PSM F1, Inc.

PSM Procurement Inc.

PTO, LLC

Publix Alabama, LLC

Publix Apron's Event Planning and Catering, LLC

Publix Asset Management Company

Publix North Carolina, LP

Publix North Carolina Employee Services, LLC

No. 25-11185

**Publix Super Markets, Inc. v. ACE Property and Casualty Insurance Company**

Publix Super Markets, Inc.

Publix Tennessee, LLC

Real Sub, LLC

St. Paul Fire & Marine Insurance Company

Steadfast Insurance Company

Sugzda, Alexander M., Esq.

The Hartford Fire Insurance Company

The Travelers Companies, Inc.

Twin City Fire Insurance Company

XL Insurance America, Inc.

Publix Super Markets, Inc., pursuant to FRAP 26.1, states that it does not have a parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

Publix Super Markets, Inc., pursuant to Eleventh Circuit Local Rule 26.1-3(b), hereby certifies that the only publicly traded companies known to it by virtue of Appellees' Certificates of Interested Persons and Corporate Disclosure Statements to have an interest in the outcome of the case on appeal are listed above; Publix Super Markets, Inc. certifies that there are no other publicly traded companies known to it that have an interest in the outcome of the case on appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Publix Super Markets, Inc. ("Publix"), respectfully requests oral argument. The issues presented by this appeal are issues of first impression under controlling Florida law and in the United States Court of Appeals for the Eleventh Circuit. Moreover, the issues presented by this appeal are the subject of a nationwide split of authority, including having been decided differently by the United States Court of Appeals for the Sixth Circuit and the United States Court of Appeals for the Seventh Circuit. Publix requests that oral argument be scheduled on the same date as oral argument in *Allied Property & Casualty Insurance Co., et al. v. Bloodworth Wholesale Drugs, Inc.*, No. 24-11398-F, currently pending in this Court, which involves similar issues under Georgia law.

i

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE
    JURISDICTION ........................................................................ vii

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE.....................................................................2

I.     COURSE OF PROCEEDINGS AND DISPOSITIONS IN THE
     COURT BELOW....................................................................4

II.    STATEMENT OF THE FACTS ...............................................7

    A.    The Policies ...........................................................7

        1.    The 2013 Policies Provide Coverage for Damages
           "Because of" Bodily Injury Arising out of Publix's Sale
           of Prescription Medications .......................................9

           a.    The Druggists Policy .......................................9

           b.    The ACE Excess Policy...................................10

        2.    The 2013 Policies Contain a Defense Obligation.....................11

        3.    The Opioid Exclusion Added in 2018 ......................................11

    B.    The Opioid Lawsuits Contain Numerous and Detailed
        Allegations of "Bodily Injury"..........................................12

    C.    The Opioid Lawsuits Include Specific Allegations of Care
        Provided by the Plaintiffs to Individuals and Seek Damages
        Based on that Care...................................................16

III.   STANDARDS OF REVIEW......................................................18

    A.    This Court Reviews the District Court's Decision De Novo.............18

B.    Florida Law Applies ...................................................... 19

C.    Under Florida Law, the Insurers Have an Extensive Defense
Obligation ...................................................................... 19

D.    Florida Law Principles of Insurance Policy Interpretation ............... 20

SUMMARY OF THE ARGUMENT ............................................... 22

ARGUMENT ....................................................................... 26

I.    THIS COURT SHOULD CERTIFY THESE QUESTIONS TO THE
FLORIDA SUPREME COURT ............................................. 26

II.   THE DISTRICT COURT FUNDAMENTALLY MISAPPLIED
FLORIDA DUTY TO DEFEND LAW ..................................... 27

III.  THE OPIOID LAWSUITS ALLEGE DAMAGES BECAUSE OF
BODILY INJURY .......................................................... 29

A.    Better-Reasoned Case Law from Around the Country Has
Found Coverage for Opioid and Similar Lawsuits ...................... 33

1.    Numerous Opioid Decisions Support Publix's Position .......... 33

2.    Contrary Authority, Including *Anda*, Is Distinguishable
and Contrary to Both Florida Law and the Express
Language in the Policies ........................................... 41

3.    The District Court Ignored Nearly Identical Cases
Regarding Firearm-Manufacturer Liabilities ..................... 47

B.    If There Is Any Doubt as to Coverage, the Insurers Have a Duty
to Defend ........................................................................ 48

IV.   THE INSURERS' INTERPRETATION IMPERMISSIBLY
REWRITES SEVERAL POLICY PROVISIONS ........................... 49

V.    THE INSURERS CONCEDED THEIR DUTY TO DEFEND BY
ADDING OPIOID EXCLUSIONS TO THEIR POLICIES ................ 52

CONCLUSION .................................................................... 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACE Am. Ins. Co. v. Rite Aid Corp.*,
  270 A.3d 239 (Del. 2022) .............................................................32, 43, 44, 45

*Acuity v. Masters Pharmaceutical, Inc.*,
  205 N.E.3d 460, 2022 WL 4086449, 2022-Ohio-3092 (Ohio
  Sept. 7, 2022) ........................................................................................44, 45

*Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n*,
  721 F. App'x 847 (11th Cir. 2017) ....................................................................20

*AIU Ins. Co. v. McKesson Corp.*,
  2024 WL 302182 (9th Cir. Jan. 26, 2024) .........................................................37

*AIU Insurance Co. v. McKesson Corp.*,
  598 F. Supp. 3d 774 (N.D. Cal. 2022) ...............................................................37

*Allied Property & Casualty Insurance Co. v.*
  *Bloodworth Wholesale Drugs, Inc.*,
  727 F. Supp. 3d 1404 (M.D. Ga. 2024) ......................................................46, 47

*AmerisourceBergen Drug Corp. v. ACE American Insurance Co.*,
  2020 W.V. Cir. LEXIS 3 (Nov. 23, 2020).............................................39, 40, 45

*Atkinson v. Dollar Rent-A-Car, Inc.*,
  525 So. 2d 976 (Fla. Dist. Ct. App. 1988)..................................................22, 30

*Auto-Owners Ins. Co. v. Anderson*,
  756 So. 2d 29 (Fla. 2000) ........................................................................ 42-43

*Banks v. City of Brunswick*,
  529 F. Supp. 695 (S.D. Ga. 1981) *aff'd,* 667 F.2d 97 (11th Cir. 1982) ............17

*Blanchard v. State Farm Mut. Auto. Ins. Co.*,
  903 F.2d 1398 (11th Cir. 1990) ........................................................................27

*Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*,
  561 F.3d 1267 (11th Cir. 2009), *certified question answered*,
  94 So.3d 541 (Fla. 2012) ..........................................................................19, 26

*Cincinnati Insurance Co. v. H.D. Smith, L.L.C.*,
  829 F.3d 771 (7th Cir. 2016) .......... 24, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45

iv

*Cincinnati Insurance Co. v. Richie Enterprises, LLC*,
2014 WL 3513211 (W.D. Ky. July 16, 2014) ......................................41, 42, 43

*Garcia v. Fed. Ins. Co.*,
969 So. 2d 288 (Fla. 2007) ........................................................22, 26, 29

*Giant Eagle, Inc. v. American Guarantee & Liability Insurance Co.*,
499 F. Supp. 3d 147 (W.D. Pa. 2020), *vacated on other grounds*,
2021 WL 6276267 (W.D. Pa. May 25, 2021) ....................................................40

*Harrington v. Citizens Prop. Ins. Corp.*,
54 So. 3d 999 (Fla. Dist. Ct. App. 2010) ............................................................21

*Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center*,
566 F.3d 689 (7th Cir. 2009) ..................................................................42, 43, 44

*Huff v. DeKalb County*,
516 F.3d 1273 (11th Cir. 2008) ............................................................................18

*Jones v. Fla. Ins. Guar. Ass'n, Inc.*,
908 So. 2d 435 (Fla. 2005) ..........................................................................20, 48

*MacKinnon v. Truck Ins. Exch.*,
73 P.3d 1205 (Cal. Aug. 14, 2003) ......................................................................43

*Medmarc Cas. Ins. Co. v. Avent Am., Inc.*,
612 F.3d 607 (7th Cir. 2010) ......................................................35, 36, 42, 43

*Penley v. Eslinger*,
605 F.3d 843 (11th Cir. 2010) ............................................................................18

*Phila. Indem. Ins. Co. v. Sabal Ins. Grp., Inc.*,
786 F. App'x 167 (11th Cir. 2019) ..............................................................21, 42

*Publix Super Markets, Inc. v. Fireman's Fund Ins. Co.*,
2023 WL 6049680 (M.D. Fla. Sept. 15, 2023).....................................................8

*S.-Owners Ins. Co. v. Highwoods Contracting Corp.*,
2024 WL 5338171 (M.D. Fla. Nov. 6, 2024).................................................20, 53

*Scottsdale Ins. Co. v. Nat'l Shooting Sports Found.*,
226 F.3d 642, 2000 WL 1029091 (5th Cir. 2000)..............................................47

*Serendipity at Sea, LLC v. Underwriters at Lloyd's Subscribing to Policy No. 187581*,
56 F.4th 1280 (11th Cir. 2023) ..................................................................20, 21

v

*Siegle v. Progressive Consumers Insurance Co.*,
  819 So. 2d 732 (Fla. 2002) .................................................................52

*SIG Arms Inc. v. Emps. Ins. of Wausau*,
  122 F. Supp. 2d 255 (D.N.H. 2000)...................................................48

*St. Paul Fire Ins. Co. v. Thomas*,
  273 So. 2d 117 (Fla. Dist. Ct. App. 1973).................................29, 51

*State Nat'l Ins. Co. v. White*,
  2011 WL 5024258 (M.D. Fla. Oct. 19, 2011), *aff'd*, 482 F. App'x 434
  (11th Cir. 2012).......................................................................18, 19

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
  367 F.3d 1252 (11th Cir. 2004), *certified question answered*,
  913 So. 2d 528 (Fla. 2005) ...........................................................26, 48

*Travelers Property Casualty Co. of America v. Anda, Inc.*,
  90 F. Supp. 3d 1308 (S.D. Fla. 2015), *aff'd*, 658 F. App'x 955
  (11th Cir.2016)...........................................................23, 24, 41, 42

*U.S. Sugar Corp. v. Com. & Indus. Ins. Co.*,
  644 F. Supp. 3d 1057 (S.D. Fla. Dec. 2, 2022) ...........................21, 49

*Walmart Inc. v. ACE Am. Ins. Co.*,
  2023 WL 9067386 (Ark. Cir. Ct. Dec. 29, 2023)..................38, 39, 40

*Washington Nat'l Ins. Corp. v. Ruderman*,
  117 So. 3d 943 (Fla. 2013) .................................................................21

*Westfield National Insurance Co. v. Quest Pharmaceuticals, Inc.*,
  57 F.4th 558 (6th Cir. 2023) ..................................................24, 44, 45

## Statutes & Other Authorities:

Fed. R. Civ. P. 56(a).................................................................................18

Fla. Const. Art. V § 3(b)(6)......................................................................26

Fla. R. App. P. 9.150.................................................................................26

Ga. Code Ann. § 10-13B-1 ......................................................................18

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The United States District Court for the Middle District of Florida (the "District Court") had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Publix and the Defendants-Appellees (the "Insurers") and the amount in controversy exceeds $75,000, exclusive of interest and costs.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision of a district court.

The District Court entered Declaratory Judgment on March 14, 2025 (Doc 284), and a further Judgment on March 18, 2025 (Doc 285), entering final judgments in favor of all Defendants on all claims. Publix timely filed its Notice of Appeal on April 10, 2025 (Doc 288).

This appeal is from final judgments that dispose of all parties' claims.

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in holding that lawsuits brought by governmental plaintiffs and healthcare providers against Publix alleging that Publix's distribution and sale of opioid medication caused, at least in part, bodily injury, sickness or disease, and death, and seeking to have Publix pay for the costs of providing medical treatment and other services, do not seek damages "because of 'bodily injury'" as that term is defined in the insurance policies that the Insurers sold to Publix?

2.    Whether the District Court's holding was contrary to Florida law in that it impermissibly rewrote the Insurers' policies to add an exclusion for opioid liabilities that the Insurers themselves did not add in policies sold to Publix between 1995 and 2018?

1

## STATEMENT OF THE CASE

Publix, the largest employee-owned company in the United States, owns supermarkets that are a cornerstone of the communities they serve in Florida and across the southeastern U.S. (Doc 11 - Pg 3 ¶¶ 1–2.) Those supermarkets contain retail pharmacies that fill prescriptions, including for opioid medications. (Doc 177-11 - Pg 129 ¶ 461.) As the costs of the nationwide opioid epidemic have continued to mount, state and local governments and healthcare providers have filed lawsuits against numerous defendants involved in the manufacture, marketing, and, in the case of Publix, filling of prescriptions for opioid medication (the "Opioid Lawsuits"). (Docs 11-5, 177-9 – 177-11.)

Publix has purchased for decades primary and excess druggists liability insurance to protect itself in the event that its dispensing of medication subjected it to claims because of "bodily injury," defined as "bodily injury, sickness or disease sustained by a person, including ... death." (Doc 177 - Pg 2 ¶ 5; Doc 177-1 - Pg 16 § V(2); Doc 177-3 - Pg 20 § VIII(C).)[1] The Opioid Lawsuits allege that Publix was responsible, in part, for thousands of instances of injury, sickness, disease, and death as individuals fell victim to opioid abuse and addiction. (*See, e.g.*, Doc 177-11 - Pgs 211–13, 223 ¶¶ 703–04, 708, 746.) Publix has denied wrongdoing and is vigorously

---

[1] When citing to the insurance policies, Publix cites to the page number that appears in the header generated by the District Court's electronic filing system.

defending itself against the Opioid Lawsuits, and, under the terms of Publix's druggists insurance policies, its Insurers agreed to provide that defense. (Doc 177-1 - Pgs 6, 16–17 §§ I(1)(a) & V(4); Doc 177-2 - Pg 40 § I(1)(b); Doc 177-3 - Pg 8 § III(A).)

However, the Insurers breached their contractual obligation to pay for Publix's defense and have denied coverage, taking the position that the Opioid Lawsuits do not seek damages "*because of* 'bodily injury.'" The Insurers argue that because the Opioid Lawsuits do not seek damages for the costs of treating any particular, identified individual, they seek to recover only for "aggregate social harm" caused by the opioid epidemic, and the detailed allegations of the various injuries, diseases, and deaths do not trigger coverage; they merely provide "context." The District Court adopted these arguments in denying Publix's motion for partial summary judgment and granting judgment to the Insurers dismissing Publix's claims. (*See* Docs 270, 284, 285.) This is contrary to black-letter Florida law on the duty to defend, which requires that all allegations be considered in assessing coverage, and that if any allegation or theory is arguably covered, the insurer must defend the entire action. It is also contrary to the Insurers' own interpretation of their policies, given that they added specific exclusions for opioid liabilities to their policies in 2018, exclusions that would not be necessary if such claims were never

arguably covered in the first place, which the District Court acknowledged. (Doc 270 - Pg 32.)

Courts across the country have been divided on the question of whether opioid-related claims asserted by state and local governments and healthcare providers are claims "because of bodily injury." Courts have split virtually equally between finding that there is a defense obligation and finding that there is not. The better-reasoned cases find defense coverage; the other cases impose limitations on coverage that are inconsistent with the policies' plain language.

Florida law on the duty to defend is especially broad as compared with other jurisdictions. Because the Florida Supreme Court, the Florida District Courts of Appeal, and this Court have not yet addressed this important issue, this Court should certify these questions of Florida law to the Florida Supreme Court. Alternatively, Publix requests that this Court reverse the District Court's decision, vacate the judgment based on that decision, and enter partial summary judgment in Publix's favor on the duty to defend.

## I.    COURSE OF PROCEEDINGS AND DISPOSITIONS IN THE COURT BELOW

Following the Insurers' denial of coverage for Publix's claim under the policies at issue, and given the complete diversity between Publix and the Insurers, Publix commenced this action in the District Court on November 11, 2022. (*See generally* Doc 1.) Publix filed its motion for partial summary judgment on April 3,

4

2023, seeking to address two threshold issues raised by the Insurers that would determine whether Publix was entitled to any defense coverage for the Opioid Lawsuits: whether the Opioid Lawsuits alleged (1) "damages because of 'bodily injury'" and (2) an "occurrence" under the 2013 primary and excess druggists liability policies (the "2013 Policies" or "Policies"), which Publix selected as exemplar policies with language identical, or at least substantively similar, to language in all implicated policy periods prior to the Insurers' adoption of an opioid exclusion in Publix's policies in 2018. (Doc 270 - Pg 1.)[2]

The District Court denied Publix's motion, and ordered Publix to show cause why summary judgment should not be granted in the Insurers' favor, in its Order dated October 29, 2024 (the "Order"). (*Id.* - Pg 33.) The Order acknowledged that the Opioid Lawsuits alleged that Publix had played a role in the opioid "epidemic," and that the "consequences of [Publix's] alleged actions include ... addiction, overdose, injuries, and deaths ... [and] [i]nfants born addicted to opioids." (*Id.* - Pgs 1, 4–5.) The Order further acknowledged that the plaintiff government entities alleged that they incurred increased costs for "emergency medical responses to overdoses" and "to treat those with opioid use disorders." (*Id.* - Pg 5.) The Order also acknowledged that, although the Insurers characterized the Opioid Lawsuits'

---

[2] While the Opioid Lawsuits allege an "accident," and therefore an "occurrence" under Florida law, and also therefore do not implicate "Expected/Intended" policy exclusions, the District Court did not reach these issues. (*Id.* - Pg 16.)

claims as seeking "aggregate" damages, those damages are "comprised of injuries to specific individuals" and "specific injuries." (*Id.* - Pgs 28, 31.)

The District Court applied Florida law and explained that "[n]either the Florida Supreme Court, Florida's District Courts of Appeal, nor the Eleventh Circuit" has addressed whether the Opioid Lawsuits allege damages because of bodily injury. (*Id.* - Pg 21.) The District Court acknowledged a nationwide "split in the caselaw" on the issue, but "assume[d]" that Florida courts would follow what it found to be the "majority view," that "the opioid lawsuits do not seek damages directly caused by bodily injury." (*Id.* - Pgs 21, 22.) The District Court found that under Florida law, the term "because of" "is narrower in meaning than the term 'arising out of'" and requires a "direct causal connection." (*Id.* - Pgs 23, 26.) Despite acknowledging the facts listed above, the District Court held that "the causal connection between the specific injuries alleged and the damages the underlying plaintiffs seek in the opioid lawsuits is too attenuated" and "circuitous at best." (*Id.* - Pg 28.)

In reaching its decision, the District Court found that, while a "government entity seeking to recover the cost of a specific injured person's care" is an example of the type of claim that would be covered, the Opioid Lawsuits "do not seek reimbursement for the costs of ... particular individuals' medical treatment." (*Id.* - Pgs 28, 30.) This finding is contradicted by the clear allegations of the Opioid

6

Lawsuit complaints. Despite Florida law that requires "any doubts" about the duty to defend to be resolved in favor of coverage, and despite acknowledging the split between the U.S. Courts of Appeal for the Sixth and Seventh Circuits on coverage for these same allegations under this same policy language (*id.* - Pgs 21, 26–27, 29–30), the District Court ruled that there was not even a *potential* for coverage, and it entered judgment dismissing Publix's claims on March 18, 2025. (Doc 285.)

## II.    STATEMENT OF THE FACTS

### A.    The Policies

Publix purchased more than $100 million in druggists liability coverage in each potentially implicated policy year to protect itself against risks such as the Opioid Lawsuits. From January 1, 2013 to January 1, 2014 (the exemplar policy period), Publix purchased the following tower of liability coverage, providing $180 million in total limits of liability per "occurrence" and in the aggregate:

| Layer | Insurer and Policy Number | Limits of Liability | Doc |
|---|---|---|---|
| Self-Insured Retention | N/A | $1.9 million | N/A |
| Primary (Fronting) | Hartford Fire Insurance Company ("The Hartford") Policy No. 20 ECS D70778 (the "Druggists Policy") | $100,000 excess of $1.9 million with $100,000 deductible | 177-1 |
| Umbrella | Liberty Mutual Fire Insurance Company ("Liberty Mutual") Policy No. TH2-651-286611-013 (the "Umbrella Policy") | $3 million excess of $2 million | 177-2 |

| 1st Layer Excess | ACE Property and Casualty Insurance Company ("ACE") Policy No. XOO G27049539 (the "ACE Excess Policy") | $25 million excess of $5 million | 177-3 |
|---|---|---|---|
| 2nd Layer Excess | Great American Insurance Company of New York Policy No. EXC 4645853 | $25 million excess of $30 million | 177-4 |
| 3rd Layer Excess | Liberty Insurance Underwriters Inc. Policy No. 1000026300-10 | $50 million excess of $55 million | 177-5 |
| 4th Layer Excess | XL Insurance America, Inc. Policy No. US00007634LI13A | $25 million excess of $105 million | 177-6 |
| 5th Layer Excess | The Ohio Casualty Insurance Company Policy No. ECO (14) 53 16 31 32 | $25 million excess of $130 million | 177-7 |
| 6th Layer Excess | National Surety Corporation ("NSC") Policy No. SHX-000-4868-5002 | $25 million excess of $155 million | N/A[3] |

The Druggists Policy is triggered after Publix has exhausted the self-insured retention if the terms and conditions of the Policy are satisfied. However, it is a "fronting" policy, meaning its deductible is equal to the policy limit and Publix must reimburse amounts received under the Policy up to the deductible amount. (*See* Doc 177-1 - Pgs 23–24, Endorsement ("Endt.") 4.) The next level of the tower—the Umbrella Policy—is where actual risk-transfer insurance begins. Except for a few specific provisions where the Umbrella Policy's terms apply, the Umbrella Policy incorporates nearly all of the terms, definitions, conditions, and exclusions from the

---

[3] NSC is not a party to this appeal. *See Publix Super Markets, Inc. v. Fireman's Fund Ins. Co.*, 2023 WL 6049680, at *1 (M.D. Fla. Sept. 15, 2023).

Druggists Policy. (*See* Doc 177-2 - Pg 25, Endt. 12.) Above this, the ACE Excess Policy has its own terms and conditions to which the remaining excess insurers "follow form," meaning that, except for premiums, limits of liability, attachment points, and certain specific endorsements not at issue in this appeal, the same terms as the ACE Excess Policy apply throughout the rest of the tower.[4] Therefore, the following sections focus on the language in the Druggists Policy and the ACE Excess Policy, discussing the Umbrella Policy only where it differs from the Druggists Policy.

1. **The 2013 Policies Provide Coverage for Damages "Because of" Bodily Injury Arising out of Publix's Sale of Prescription Medications**

a. ***The Druggists Policy***

The Druggists Policy's Insuring Agreement provides that The Hartford is obligated "to pay, on [Publix's] behalf, those damages and 'claim expenses' [Publix] become[s] legally liable to pay because of 'bodily injury' arising out of the 'druggists products hazard.'" (Doc 177-1 - Pg 6 § I(1)(a).)

"Druggists products hazard" is defined, in relevant part, as "[a]ll 'bodily injury' occurring away from premises [Publix] own[s] or rent[s] and arising out of 'your druggists product' ...." (*Id.* - Pg 25, Endt. 5.) The Policy defines "your druggists

---

[4] (*See generally* Doc 177-3, ACE Excess Policy terms and conditions; *see also* Doc 177-4 - Pg 9, Following Form Coverage Endt.; Doc 177-5 - Pg 14, Endt. 8; Doc 177-6 - Pg 24, Endt. 4; Doc 177-7 - Pg 21, Following Form Endt.)

product," in relevant part, as "[p]rescription drugs and medicines prepared, sold, handled distributed or disposed of by [Publix] from [Publix's] 'insured retail drug operations' ...." (*Id.* - Pgs 18–19 § V(21).)

The Druggists Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time." (*Id.* - Pg 16 § V(2).) The Druggists Policy also provides that claims asserting covered damages can be brought by any person or organization: "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (*Id.* - Pg 7 § I(1)(f).)

### b.    *The ACE Excess Policy*

The ACE Excess Policy's insuring agreement provides that ACE will pay "all sums in excess of the 'retained limit' that the 'insured' shall become legally obligated to pay as damages because of 'bodily injury' arising out of a 'pharmacist liability incident' that takes place during the 'policy period.'" (Doc 177-3 - Pg 57, Endt. 21.) The limits of the Druggists Policy and the Liberty Mutual Umbrella Policy are the "retained limit." (*Id.*)

Endorsement 21 defines "pharmacist liability incident," in relevant part, as "any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by the 'insured' in the performance of a 'pharmacist

10

professional service.'" (*Id.* - Pg 58.) It defines "pharmacist professional service" broadly to include "the manufacture, preparation, selling, handling or distribution of drugs, medicine, other goods or products and their containers by the 'insured.'" (*Id.*)

The ACE Excess Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' includes mental anguish or mental injury resulting from bodily injury." (*Id.* - Pg 20 § VII(C).) The ACE Excess Policy also provides that covered claims can be brought by any person or organization: "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (*Id.* - Pg 7 § I(D).)

### 2.    The 2013 Policies Contain a Defense Obligation

The Druggists Policy provides that The Hartford has an "obligation to pay, on [Publix's] behalf ... 'claim expenses' [Publix] become[s] legally liable to pay" (Doc 177-1 - Pg 6 § I(1)(a)), defining "claim expenses" as "expenses incurred in the ... defense of 'suits.'" (*Id.* - Pg 16 § V(4).) The Umbrella Policy and the ACE Excess Policy both state that, when attachment points are reached, the insurers have a duty to defend Publix. (Doc 177-2 - Pg 40 § I(1)(b); Doc 177-3 - Pg 8 § III(A).)

### 3.    The Opioid Exclusion Added in 2018

In 2018, certain of Publix's insurers began to include opioid exclusions that specifically address the liabilities Publix faces in the Opioid Lawsuits. For example,

ACE Umbrella Plus Commercial Umbrella Liability Policy No. G27933488 003 (policy period January 1, 2018, to January 1, 2019) to which the other 2018 excess policies follow form, includes an identical insuring agreement and the same provisions concerning "bodily injury" as the 2013 Policy (*see* Doc 177-8 - Pgs 64-65, Endt. 25), but also contains an endorsement that "CHANGES THE POLICY" and provides:

> This insurance does not apply to:
>
> **OPIOIDS AND NARCOTICS**
>
> 1. Any "claim" made by or on behalf of any "governmental entity", health or group insurer and/or union or like representative entity arising out of or related to actual or alleged "opioid and narcotics liability"; and
>
> 2. "Opioid and narcotics liability" arising out of or relating to any actual or alleged violation or nonconformance with the Controlled Substance Act or any similar act, statute, regulation, ordinance, requirement or law of a "governmental entity" by any "insured."

(*Id.* - Pg 62, Endt. 24.) The exclusion defines "Opioid and narcotics liability" to include damages arising out of the alleged diversion of opioids and failure to maintain sufficient controls to prevent diversion or report diversion. (*Id.* - Pg 63, Endt. 24.)

### B. The Opioid Lawsuits Contain Numerous and Detailed Allegations of "Bodily Injury"

As the opioid crisis spread across the nation, local governments and municipalities were confronted with increased costs incurred in treating opioid

addiction and overdoses. (*See, e.g.*, Doc 177-9 - Pgs 6–7 ¶ 19.) As a result, these parties, along with individual plaintiffs and healthcare providers, started suing pharmaceutical companies and pain clinics. (*See generally id.*; *see also* Doc 11-5.) The lawsuits further targeted retail pharmacies that filled opioid prescriptions, including Publix, which has been named as a defendant in dozens of Opioid Lawsuits. (*See, e.g.*, Docs 177-9 – 177-11; *see also* Doc 11-5.)

Several of these lawsuits filed against Publix and various other defendants were consolidated into a Multidistrict Litigation in the U.S. District Court for the Northern District of Ohio in December 2017, in the case captioned *In re National Prescription Opiate Litigation* (MDL No. 2804) (the "Opioid MDL"). The court in the Opioid MDL selected certain "bellwether" cases, including *Cobb County v. Purdue Pharma L.P., et al.*, No. 1:18-op-45817 (the "Cobb County Action"), in which Publix is a defendant, to proceed while other actions were stayed. (*See* Doc 152 - Pgs 6–7.) Thus, this brief focuses primarily on the Cobb County Action, but all the Opioid Lawsuits are materially similar, and in some instances include identical allegations as the Cobb County Action. (*See generally, e.g.*, Docs 177-9 – 177-11; *see also* Doc 270 - Pg 5; Doc 11-5.) Publix has incurred millions of dollars in its defense of the Opioid Lawsuits. (Doc 223 - Pg 1 ¶¶ 2–3.) To date, no Insurer has paid any amount toward Publix's defense costs in the Opioid Lawsuits. (Doc 177 - Pg 3 ¶ 10.)

13

On June 12, 2018, plaintiff Cobb County, Georgia, filed its initial complaint against various defendants (the "Original Complaint," Doc 177-9). Subsequently, Cobb County filed a Short Form for Supplementing Complaint and Amending Defendants and Jury Demand to include Publix and others as defendants on March 15, 2019 (the "2019 Short Form," Doc 177-10). Cobb County thereafter expanded the allegations against Publix on May 19, 2021, in Supplemental and Amended Allegations (the "Supplemental Allegations," Doc 177-11). The Supplemental Allegations incorporated all allegations in the Original Complaint and 2019 Short Form (collectively, the "Complaints"). (*Id.* - Pgs 1–2 ¶ 3.)

Cobb County alleges that it "seeks to hold accountable the Chain Pharmacies"—including Publix—that allegedly improperly sold and distributed opioids. (*Id.* - Pg 1 ¶ 2.) Generally, the County alleges that Publix negligently, recklessly, or intentionally failed to meet its "gatekeeping" responsibilities by filling prescriptions without proper internal checks and safeguards when it knew or should have known that the level of medication being prescribed was leading to diversion and abuse. (*See id.* - Pgs 29–32 ¶¶ 129–38.)

Each category of "bodily injury," as defined by the Policies, is alleged in the Complaints, including "bodily injury," "sickness or disease," "mental anguish," and "death." (*See, e.g.*, *id.* - Pg 223 ¶ 746 (summarizing allegations "throughout the

County's pleadings" as "[a] staggering increase in opioid abuse, addiction, overdose, injuries, and deaths").)[5]

The Complaints also provide detailed allegations that opioid medications are addictive, that individuals can develop an addiction to opioids, and that such addiction may lead to other forms of addiction, including to heroin and fentanyl. (*See* Doc 177-9 - Pgs 3, 6, 188–90 ¶¶ 6, 17 (alleging "skyrocketing addiction"), 612, 616.)[6] The Complaints further allege "[i]nfants being born addicted to opioids due to prenatal exposure, causing severe withdrawal symptoms and lasting developmental impacts," and children needing "years of long-term care and monitoring due to [neonatal abstinence syndrome]." (Doc 177-11 - Pgs 217, 223 ¶¶ 718, 746; *see also* Doc 177-9 - Pgs 191–92 ¶ 627.)

The complaints further allege the devastating death toll caused by the opioid crisis nationwide, in Georgia, and in Cobb County, with overdoses alone from 1999 to 2015 having killed more people than the number of Americans who died in the Vietnam War. (Doc 177-9 - Pgs 2, 6, 188–90 ¶¶ 4–5, 17, 612, 620; Doc 177-11 - Pgs 6, 211–12 ¶¶ 19, 703–04.)

---

[5] The Cobb County Action alleges that Publix engaged in conduct that contributed to the opioid epidemic during the 2013 policy period. (*Id.* - Pgs 3, 16 ¶¶ 9, 83; Doc 177-10 - Pg 38 ¶ 158.)

[6] The U.S. Centers for Disease Control and Prevention ("CDC") have long held that addiction is a disease. *See, e.g.*, "Preventing Opioid Use Disorder," CDC, available at https://www.cdc.gov/overdose-prevention/prevention/preventing-opioid-use-disorder.html (last visited on June 20, 2025).

**C.     The Opioid Lawsuits Include Specific Allegations of Care Provided by the Plaintiffs to Individuals and Seek Damages Based on that Care**

The Cobb County Complaints allege that the County provided treatment to individuals for injuries resulting from opioid use or abuse. For example, the Original Complaint alleges that "EMS is at the front line of the opioid crisis, as they are the first on-scene responders to overdoses, deaths, and injuries related to opioid abuse." (Doc 177-9 - Pg 196 ¶ 647.) It further alleges that "[o]pioid addiction and misuse also result in an increase in emergency room visits, emergency responses, and [EMT] administration of naloxone, the antidote to opioid overdose" (*id.* - Pg 191 ¶ 624) and that "[t]he County spends enormous sums for treatment programs, a large percentage of which is devoted to treating individuals with opioid-use disorder or dependence with programs for addiction treatment and recovery services." (*Id.* - Pg 196 ¶ 646.)

The Original Complaint asserted several causes of action against the defendants, all of which are expressly asserted against Publix in the Supplemental Allegations. (*See* Doc 177-11 - Pg 219 ¶ 730.) Those causes of action include a cause of action for negligence in the distribution of opioids for which Cobb County seeks its "actual damages" in an amount to be determined at trial. (*See* Doc 177-9 - Pgs 264, 271 ¶¶ 860–65, 906(b).)

The Supplemental Allegations further detail the plaintiff's "necessary and costly responses to the opioid crisis," including:

16

[T]he handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarceration, treating opioid-addicted newborns in neonatal intensive care units, burying the dead, and placing thousands of children in foster care placements, among others.

(Doc 177-11 - Pg 7 ¶ 23.)

Pursuant to an order in the Opioid MDL, the Supplemental Allegations focused on the public nuisance cause of action. (*Id.* - Pgs 219–20 ¶ 731.) Public nuisance, under Georgia law, does not need to allege intentional conduct; in fact, it has been described as the same as negligence, just with repeated conduct on a broader scale. *See, e.g.*, *Banks v. City of Brunswick*, 529 F. Supp. 695, 702 (S.D. Ga. 1981), *aff'd* 667 F.2d 97 (11th Cir. 1982). The Supplemental Allegations seek "abatement of the nuisance," and the abatement Cobb County seeks includes "measures such as providing addiction treatment to patients who are already addicted to opioids, making naloxone more widely available ... and a number of other proven measures to address the epidemic." (Doc 177-11 - Pgs 19, 225 ¶¶ 97, 753(a).) Cobb County seeks to have Publix "pay for [its alleged] conduct" and "fund the abatement" through the County's "infrastructure and expertise." (*Id.* - Pgs 217, 225 ¶¶ 720, 751–52.)

That the damages that the Opioid Lawsuit plaintiffs seek from Publix are for the costs of treatment of injured individuals is further underscored by the Executive Order establishing a settlement fund for the State of Georgia, which states settlement

funds will be used for "prevention and treatment of opioid addiction and related disorders." Ga. Code Ann. § 10-13B-1.

The plaintiffs in two of the Opioid Lawsuits filed against Publix are healthcare providers, not government entities. (*See* Doc 11-5 - Pg 1.) The healthcare plaintiffs allege substantially similar conduct by Publix and seek damages for unreimbursed costs of treatment for individuals arising out of the opioid epidemic. (*See* Doc 270 - Pg 5.)

## III.   STANDARDS OF REVIEW

### A.    This Court Reviews the District Court's Decision *De Novo*

The Eleventh Circuit reviews a district court's denial of summary judgment *de novo*, *see, e.g.*, *Huff v. DeKalb County*, 516 F.3d 1273, 1277 (11th Cir. 2008), applying the "same legal standards that governed the district court's analysis." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).

A motion for summary judgment is properly granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, no material facts are in dispute; the parties' only dispute on appeal is the interpretation of the terms of the Policies, which is a question of law that is appropriate for summary judgment and which this Court reviews *de novo*. *See, e.g.*, *State Nat'l Ins. Co. v. White*, 482 F. App'x 434, 438 n.2 (11th Cir. 2012).

### B.    Florida Law Applies

Because federal jurisdiction over this matter is based on diversity, Florida law governs. *See, e.g.*, *id.* All parties agreed at the District Court level that Florida law applied, and the District Court applied Florida law throughout the Order. (*See, e.g.*, Doc 270 - Pg 20 & n.9.) Thus, the rulings of the Supreme Court of Florida control this Court's decision. *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267, 1274 (11th Cir. 2009), *certified question answered*, 94 So. 3d 541 (Fla. 2012). As the District Court correctly observed, "[n]either the Florida Supreme Court, Florida's District Courts of Appeal, nor the Eleventh Circuit [has] addressed" the issue of whether opioid lawsuits allege damages "because of bodily injury" under Florida law. (Doc 270 - Pg 21.)

### C.    Under Florida Law, the Insurers Have an Extensive Defense Obligation

While the Druggists Policy contains a duty for The Hartford to pay Publix's defense costs and the Umbrella Policy and the ACE Excess Policy contain a duty to defend once their respective policies are triggered, that is a distinction without a difference in determining when those defense obligations are triggered: the two duties are coextensive under Florida law. *See, e.g.*, *State Nat'l Ins. Co. v. White*, 2011 WL 5024258, at *5 (M.D. Fla. Oct. 19, 2011), *aff'd*, 482 F. App'x 434 (11th Cir. 2012).

19

A court applying Florida law determines whether an insurer has a defense duty by comparing the allegations in the complaint to the language of the insurance policy. This is known as the "eight corners rule." *See Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n*, 721 F. App'x 847, 854 (11th Cir. 2017). In making that comparison, if only one claim in an underlying action is potentially covered, the insurer must defend the entire action. *See, e.g.*, *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005); *S.-Owners Ins. Co. v. Highwoods Contracting Corp.*, 2024 WL 5338171, at *2, *4 (M.D. Fla. Nov. 6, 2024) ("[T]he duty to defend is broad. If it is possible that any claim alleged in the underlying litigation could be covered by the Policy, [the insurer] has a duty to defend."). Thus, the standard for determining whether an insurer has a defense obligation is broad, and "[a]ny doubts regarding the duty to defend are resolved in favor of the insured." *Addison*, 721 F. App'x at 854.

### D.    Florida Law Principles of Insurance Policy Interpretation

When examining the language within the four corners of the policy, black-letter Florida law requires that the court must interpret "plain and unambiguous" language "in accordance with the plain meaning of the language [that the insurer] used so as to give effect to the policy *as it was written*." *Serendipity at Sea, LLC v. Underwriters at Lloyd's Subscribing to Policy No. 187581*, 56 F.4th 1280, 1285 (11th Cir. 2023) (emphasis added). Further, a policy's plain meaning should be interpreted

as it would be understood by an ordinary person. *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1001 (Fla. Dist. Ct. App. 2010). The policy must also be interpreted as a whole so as not to render any provision meaningless. *See, e.g.*, *U.S. Sugar Corp. v. Com. & Indus. Ins. Co.*, 644 F. Supp. 3d 1057, 1064 (S.D. Fla. Dec. 2, 2022). Further, "[i]f an insurer does not define a policy term, the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided." *Harrington*, 54 So. 3d at 1001 (quotation omitted).

If the policy language is susceptible to more than one reasonable interpretation, it is ambiguous and must be interpreted "liberally in favor of the insured and strictly against the insurer." *Serendipity at Sea*, 56 F.4th at 1285–86 (quotation omitted). "Thus where ... one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013).

Florida law provides that, to analyze coverage under an insurance policy, the insuring agreement must be analyzed first to determine whether coverage exists, and, it if it does, policy exclusions are analyzed to determine whether that coverage is excluded. *Phila. Indem. Ins. Co. v. Sabal Ins. Grp., Inc.*, 786 F. App'x 167, 172–73 (11th Cir. 2019). As the *Sabal* court explained: "Florida law clearly states that an exclusionary provision does not apply unless there is coverage in the first instance. Without coverage there is nothing from which to exclude." *Id.* at 172.

## SUMMARY OF THE ARGUMENT

Because the issues have not been addressed under Florida law by any Florida District Court of Appeal or the Florida Supreme Court, this Court should certify the questions presented in this appeal to the Florida Supreme Court. *See infra* § I.

If this Court chooses to address these questions without certification, it is clear from the language of the Policies, governing Florida law, and better-reasoned case law from across the country, that Publix is entitled to coverage from the Insurers for the costs of defending against the Opioid Lawsuits because they seek damages "because of 'bodily injury.'" Florida law interprets the term "because of" to require a "direct causal connection," *see, e.g.*, *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 292 (Fla. 2007); *Atkinson v. Dollar Rent-A-Car, Inc.*, 525 So. 2d 976, 977 (Fla. Dist. Ct. App. 1988), meaning there must be a direct causal connection between the damages sought in the Opioid Lawsuits and the bodily injuries alleged therein. The Opioid Lawsuit complaints satisfy this requirement. *See infra* § II. The Opioid Lawsuit complaints allege that Publix dispensed opioid medication that caused injuries in the form of opioid overdoses; sickness and disease in the form of addiction, opioid use disorder, neonatal abstinence syndrome, and Hepatitis C; mental anguish to opioid users and their families; and thousands of deaths. No one disputes, and the District Court acknowledged, that these are allegations of "bodily injury" as defined by the Policies.

22

The Opioid Lawsuits seek damages, at least in part, because of that bodily injury. They allege the significant costs each plaintiff jurisdiction or healthcare provider has incurred in response to the opioid epidemic, treating those injured by opioids at the site of overdoses, in emergency rooms, and in many cases for months or years of addiction treatment and rehabilitation. The plaintiffs also allege costs incurred burying the dead. The Opioid Lawsuits seek these actual damages due to Publix's alleged conduct and seek to have Publix "pay for its conduct" by paying "actual damages," contributing to the specific costs of addiction treatment, and further broadly seeking Publix's contribution toward any other measure successful in remedying the opioid crisis. This is the direct causal connection required under Florida law and demonstrates that the Opioid Lawsuits seek damages "because of 'bodily injury.'"

While there has been one case—*Travelers Property Casualty Co. of America v. Anda, Inc.*, 90 F. Supp. 3d 1308 (S.D. Fla. 2015), *aff'd*, 658 F. App'x 955 (11th Cir. 2016)—that has addressed coverage for opioid liabilities under Florida law, the Southern District of Florida's finding of no coverage is inapplicable here due to almost entirely different policy language and clear flaws in its analysis of prior case law, which have been subsequently illustrated by later decisions. *See infra* § III. On appeal, this Court did not address the issue of whether opioid lawsuits allege

damages because of bodily injury; it ruled solely on the impact of policy exclusions absent from Publix's Policies. *See* 658 F. App'x at 958.

Reversal of the District Court's decision, and ruling that under Florida law the Opioid Lawsuits do allege damages "because of 'bodily injury,'" would align this case with the better-reasoned cases from across the country finding coverage for the same allegations under the same policy language, including the Seventh Circuit's decision in *Cincinnati Insurance Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771 (7th Cir. 2016). The contrary decisions, including the Sixth Circuit's decision in *Westfield National Insurance Co. v. Quest Pharmaceuticals, Inc.*, 57 F.4th 558 (6th Cir. 2023), violate Florida's rules of insurance policy construction in superimposing restrictions on coverage that appear nowhere in the Policies' plain language to allow insurers to avoid coverage for this specific type of liability—opioid lawsuits—that they did not exclude until adding the Opioid Exclusion to policies issued *after* the Policies at issue. The District Court's decision here is no different, running roughshod over the Policies' language and creating obvious textual conflicts and inconsistencies not permitted under Florida law. *See infra* § IV.

This split of authority at the very least creates doubt as to whether the Insurers have an obligation to defend Publix in the Opioid Lawsuits, doubt that, under Florida law, must be resolved in favor of finding a defense obligation. *See infra* § V. Moreover, the addition of the Opioid Exclusion operates as a concession, as the

24

District Court realized but did not act upon, that there was at the very least a possibility of coverage for the Opioid Lawsuits under the Policy language at issue here, and a possibility of coverage is all that is required under Florida law to trigger an insurer's duty to defend. *See infra* § VI.

For all the foregoing reasons, the District Court's decision was in error and should be reversed.

**ARGUMENT**

## I.  THIS COURT SHOULD CERTIFY THESE QUESTIONS TO THE FLORIDA SUPREME COURT

The District Court correctly recognized that the "question of whether opioid lawsuits allege damages 'because of bodily injury' under Florida law presents an issue of first impression" and "[n]either the Florida Supreme Court, Florida's District Courts of Appeal, nor the Eleventh Circuit [has] addressed it." (Doc 270 - Pg 21.) In such instances, this Court has repeatedly stated that "'[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court.'" *See, e.g.*, *Chalfonte*, 561 F.3d at 1272 (quotation omitted). Accordingly, this Court should certify the issues presented here to the Florida Supreme Court. *See* Fla. Const. Art. V § 3(b)(6); Fla. R. App. P. 9.150.

Certification would also align with this Court's long precedent of certifying substantially similar issues to the Florida Supreme Court; indeed, the major cases interpreting the term "because of" central to this appeal under Florida law were decided based on certified questions from this Court to the Florida Supreme Court. *See, e.g.*, *Garcia*, 969 So. 2d 288 (accepting certified questions to "resolve … uncertainties" in insurance policy interpretation under Florida law and interpreting the phrase "because of"); *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005) (accepting certified question of "Florida law as determinative of

26

a cause pending in [the Eleventh Circuit] and for which there appears to be no controlling precedent" to determine coverage for an analogous claim involving a gun manufacturer sued by municipalities for costs arising from gun violence on public nuisance theory); *see also Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1400 (11th Cir. 1990) (certifying question where there was no controlling Florida Supreme Court precedent and conflict existed among other courts). The issues presented here are the exact issues for which certification is available and are substantially similar to policy-interpretation issues that this Court has previously certified. Accordingly, this Court should certify the questions presented here to the Florida Supreme Court.

## II.    THE DISTRICT COURT FUNDAMENTALLY MISAPPLIED FLORIDA DUTY TO DEFEND LAW

As explained above, the duty to defend under Florida law is extraordinarily broad, requiring a thorough review of the allegations in the complaint against the policyholder and a defense where even one theory in the complaint presents even a possibility of coverage. *See supra* § III.C. The District Court reviewed the Opioid Lawsuit complaints, which contain extensive allegations of injury, sickness, disease, and death (*i.e.*, "bodily injury" as defined in the Policies) allegedly caused by Publix's conduct in filling opioid prescriptions, and found not a single theory that could possibly seek damages because of "bodily injury." This could only happen through fundamental misapplication of Florida law on the duty to defend.

27

The District Court acknowledged the general standards for the duty to defend under Florida law (Doc 270 - Pgs 20–21) and specifically listed the allegations of "addiction, overdose, injuries, and deaths" and "[i]nfants being born addicted to opioids due to prenatal exposure." (*Id.* - Pg 5.) It further noted the allegations that these injuries and deaths led to "[i]ncreased costs and expenses for [Cobb County] relating to healthcare services." (*Id.*) And the Court understood that "aggregate damages," as the Insurers characterize the damages sought by the Opioid Lawsuit plaintiffs, are "comprised of injuries to specific individuals." (*Id.* - Pg 31.) The District Court did make erroneous factual findings, including that the Opioid Lawsuits "do not seek reimbursement for the costs of … particular individuals' medical treatment" and "do not require proof" of the alleged injuries. (*Id.* - Pgs 28, 30). However, the facts the District Court *acknowledged* should have resulted in a finding that the Insurers owe defense coverage to Publix under Florida law.

To avoid finding defense coverage, the District Court, contrary to Florida law, ignored allegations that provided a possibility of coverage under the Policies and instead looked for ways to avoid coverage. The position it adopted superimposes requirements about what types of plaintiffs need to bring underlying claims and what they specifically need to allege that are found nowhere in the Policies (in fact, these requirements run contrary to other language in the Policies, as explained *infra* § IV). To the extent the District Court had any doubt about coverage, it resolved it in favor

28

of the Insurers. This is directly contrary to Florida law on the duty to defend. Applying Florida's policy-interpretation standards and the eight-corners analysis, it is inescapable that the Opioid Lawsuits allege, at least in part, covered damages "because of 'bodily injury,'" thus triggering the Insurers' duty to defend Publix.

## III. THE OPIOID LAWSUITS ALLEGE DAMAGES BECAUSE OF BODILY INJURY

The Opioid Lawsuits allege damages "because of" bodily injuries as those words are ordinarily understood and as they have been interpreted under Florida law. The words "because of bodily injury" have been described as "broad, comprehensive language" that provides coverage for a policyholder's "legal liability … [u]nless expressly excluded." *St. Paul Fire Ins. Co. v. Thomas*, 273 So. 2d 117, 119 (Fla. Dist. Ct. App. 1973). The primary case addressing the meaning of "because of" under Florida law in the insurance context is *Garcia*, in which the Florida Supreme Court, answering a certified question from this Court, held that "because of" means "caused by" or "by reason of" and that it has a "more circumscribed meaning … than merely being a sequential link in the chain of events." 969 So. 2d at 292–93.[7] Other Florida authority holds that "because of" in the insurance context requires "a direct causal

---

[7] *Garcia* rejected an argument that "because of" should be construed in the same manner as the phrase "arising out of," *id.* at 293; however, no policy language with "arising out of" is at issue in this appeal, and Publix has not argued that "because of" should be interpreted in the same manner as "arising out of" or that its entitlement to coverage depends on applying "but-for" causation associated with "arising out of" language.

connection." *See, e.g.*, *Atkinson*, 525 So. 2d at 977. Applying these principles here, it is clear that the Opioid Lawsuits seek damages because of bodily injury.

**First**, the Opioid Lawsuits assert that Publix directly caused bodily injuries to thousands of individuals. For example, the Cobb County Action alleges that Publix "flood[ed the] market with far greater quantities of prescription opioids than [it knew] could be necessary for legitimate medical uses [and] fail[ed] to report, and to take steps to halt suspicious orders and sales." (Doc 177-11 - Pgs 5–6 ¶ 18.) As a result, the plaintiff alleges that Publix caused every type of "bodily injury" covered by the Policies:

- bodily injury (*id.* - Pgs 6–7 ¶ 21 (alleging "skyrocketing" opioid overdoses "[a]s a direct and foreseeable result of [Publix's] conduct"); *id.* - Pg 223 ¶ 746 (alleging Publix's conduct created a "staggering increase in … injuries"));

- sickness or disease (*id.* - Pg 2 ¶ 7 (alleging an "epidemic of opioid addiction" that has "severely impacted the public health" of Cobb County); *id.* - Pg 211 ¶ 700 (alleging Publix's "fail[ure] to report or suspend suspicious orders" caused a "crisis of … addiction" in Georgia); *id.* - Pg 213 ¶ 708 (alleging hundreds of thousands of Georgians have an opioid use disorder); Doc 177-9 - Pg 191 ¶ 625 (alleging "an increase in Hepatitis C in the United States is directly tied

30

to intravenous injection of opioids"); *id.* ¶ 627 (alleging "a dramatic rise in the number of infants who … suffer from neonatal abstinence syndrome"));

- mental anguish (*id.* ¶ 623 ("Georgia families and communities have faced heartbreaking tragedies that cannot adequately be conveyed by the overdose statistics, and have faced them all too often.");

- and death (*id.* - Pg 2 ¶ 5 (alleging more deaths from opioids prescribed by doctors than Americans who were killed in the Vietnam War).

**Second**, the Cobb County Action alleges that the County incurred significant costs treating and caring for these injured individuals or otherwise responding to bodily injury, including emergency care for those experiencing overdoses, addiction treatment, and burying the dead. (*See, e.g.*, Doc 177-11 - Pg 7 ¶ 23.)

**Third**, Cobb County seeks damages from Publix for the costs of providing this treatment and related expenses. Cobb County has asserted all causes of action asserted in the Original Complaint against Publix, and those causes of action, including negligence, sought relief including the County's "actual damages." (*Id.* - Pg 219 ¶ 730; Doc 177-9 - Pgs 264, 271 ¶¶ 865, 906(b).) The Supplemental Allegations specifically seek to have Publix "pay for [its] conduct" and "abatement of the nuisance." (Doc 177-11 - Pgs 217, 219–20, 225 ¶¶ 720, 731, 753(a).) The Supplemental Allegations state that the nuisance can be abated by "providing

31

addiction treatment" as well as "a number of other proven measures," which can include all manner of treatment provided to injured individuals. (*Id.* - Pg 19 ¶ 97.)[8]

Thus, contrary to the findings of the District Court, the Opioid Lawsuits allege a direct causal connection between Publix's filling of opioid prescriptions and the damages sought by the plaintiffs to treat those injured by opioids. There is nothing "attenuated" or "circuitous" about those allegations. (*See* Doc 270 - Pg 28.)

Nevertheless, the Insurers argued (and the District Court agreed) that the Opioid Lawsuits are not covered because they seek damages for "aggregate social harm," rather than specified individual injuries, characterizing these damages as so-called "economic damages," which they argued are not covered under the Policies. But these so-called "aggregate" injuries are necessarily made up of injuries to specific individuals that the Insurers and the District Court concede would be covered. (*Id.* - Pg 30.) There is no difference between the governmental entity plaintiffs and the other types of potential plaintiffs that the District Court and the Insurers concede would be covered, except that they are seeking to recover the costs of treatment for thousands of people injured and treated over the course of more than

---

[8] While the District Court noted that certain Opioid Lawsuits specifically disclaim seeking damages for personal injury (Doc 270 - Pg 31), several Opioid Lawsuits, including the Cobb County Action, do not make any such disclaimer. And where the disclaimer was made, it has been described as a "pleading tactic made to avoid" a potentially applicable statute of limitations that has no impact on the coverage analysis focused on the facts alleged. *See ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 255–56 (Del. 2022) (Vaughn, J., dissenting).

a decade in a single action rather than in thousands of individual actions. And, to be clear, there is no limitation or exclusion in the Policies barring coverage based on the magnitude of the alleged harm, or the number of injured parties.

Put simply, if Publix could show no public nuisance existed because opioid medication did not in fact cause injury, sickness or disease, or death, or that the plaintiffs did not incur costs in connection with those injuries for which they are seeking damages, the Opioid Lawsuits would fall apart. This is proof positive that these lawsuits seek damages "because of 'bodily injury'" and that the allegations involve the requisite direct causal connection to satisfy that phrase under Florida law.

### A. Better-Reasoned Case Law from Around the Country Has Found Coverage for Opioid and Similar Lawsuits

#### 1. Numerous Opioid Decisions Support Publix's Position

While there has been a split of authority nationally on whether opioid lawsuits allege damages "because of 'bodily injury,'" the better-reasoned decisions support Publix's position. Because the Opioid Lawsuits allege a potentially covered claim under Florida law, the Insurers owe Publix a defense.

The District Court attempted to "forecast state law" by "assum[ing] that [Florida courts] would adopt the prevailing or majority view" on the issue of whether opioid lawsuits allege damages "because of 'bodily injury.'" (Doc 270 - Pgs 21–22.) However, as the Order itself demonstrates, there is no "prevailing or majority view"

on this issue. (*Id.* - Pg 22.) The District Court's Order actually discussed *more* cases finding that opioid lawsuits allege damages "because of 'bodily injury'" than cases finding the opposite. (*Id.* - Pgs 24–31 & n.14.) There are virtually an equal number of cases on both sides, all of which are discussed *infra*, and, importantly, U.S. Courts of Appeal are split, with the Seventh Circuit finding coverage for opioid liabilities and the Sixth Circuit finding no coverage. There simply is no "prevailing or majority view," and in basing its decision on a contrary conclusion, the District Court erred.

In the first case by a U.S. Court of Appeals to consider these issues, the Seventh Circuit in *H.D. Smith* considered nearly identical policy language and underlying allegations and held that the policyholder was entitled to coverage. In *H.D. Smith*, West Virginia sued the policyholder, a pharmaceutical distributor, "for contributing to the state's epidemic of prescription drug abuse" by "negligently distribut[ing] [opioid] drugs." 829 F.3d at 773, 775. Just as in the Opioid Lawsuit allegations against Publix, the State alleged that "money was spent caring for drug-addicted West Virginians who suffer drug-related injuries and cannot pay for their own care." *Id.* at 773.

Further, *H.D. Smith* had virtually identical policy language as Publix has in its 2013 Policies regarding "bodily injury" and covered damages including "'damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.'" *Id.* In finding that H.D. Smith's insurer had a

34

defense obligation, the Seventh Circuit differentiated between policies that cover damages "for" bodily injury and those that cover damages "because of" bodily injury: "The policy … issued to H.D. Smith covers suits seeking damages '*because of* bodily injury.' Such a policy provides broader coverage than one that covers only damages '*for* bodily injury.'" *Id.* at 774. In a prior decision, the court had described the difference between "for" and "because of" bodily injury as follows:

> [A]n individual has automobile insurance; the insured individual caused an accident in which another individual became paralyzed; the paralyzed individual sues the insured driver only for the cost of making his house wheelchair accessible, not for his physical injuries. If the insured driver had a policy that only covered damages "for bodily injury" it would be reasonable to conclude that the damages sought in the example do not fall within the insurer's duty. However, if the insurance contract provides for damages "because of bodily injury" then the insurer would have a duty to defend and indemnify in this situation.

*Id.* at 774 (quoting *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010)). Despite incorporating this concept from *Medmarc*, the Seventh Circuit explained that *Medmarc* "is readily distinguishable" from the facts of H.D. Smith's claim because *Medmarc*, unlike the underlying opioid lawsuit in *H.D. Smith*, contained "no claim of bodily injury in any form." *Id.* at 775. The District Court used this as a basis to distinguish *H.D. Smith*, finding this discussion of the difference between "for" and "because of" bodily injury made the Seventh Circuit's decision "not consistent with Florida law's requirement of a direct causal connection." (Doc

270 - Pg 31.) But in doing so, the District Court mixed its concepts: *H.D. Smith* never said it found the lawsuits alleged damages "because of 'bodily injury'" based on some lesser standard of causation; it merely distinguished between two common formulations of policy language, and the language before it ("because of") is the same language in Publix's Policies.

Contrary to the holding in *Medmarc*, the court in *H.D. Smith* held that the policyholder's claim was covered because "West Virginia alleged that its citizens suffered bodily injuries and the state spent money caring for those injuries—money that the state seeks in damages." *Id.* at 774. The insurer in *H.D. Smith* argued that the State sought its own damages, not damages on behalf of its citizens (just as the District Court wrongly concluded here), but the Seventh Circuit brusquely rejected that argument: "But so what? [The insurer's] argument is untethered to any language in the policy." *Id.*

The same analysis and conclusion should apply here. There is no language in the Policies that claims brought by government entities are not covered, or that only certain types of damages sought in such suits are entitled to coverage. As the Seventh Circuit concluded in *H.D. Smith*, "the plain language of the policy requires [the insurer] to defend." *Id.* at 773. That same plain language requires the Insurers to defend Publix against substantively identical underlying allegations here.

36

The findings and holding in *H.D. Smith* have been affirmed by courts around the country. For example, in *AIU Insurance Co. v. McKesson Corp.*, 598 F. Supp. 3d 774 (N.D. Cal. 2022), the court also considered coverage for allegations in the Opioid MDL under substantively identical policy language. *Id.* at 779–80, 784–85. The court held that, because "the event precipitating the legal action is bodily injury; the costs that result from such action are therefore incurred 'because of' bodily injury." *Id.* at 785 (quotation omitted).

As in *H.D. Smith*, *McKesson* rejected the insurers' argument that there should be no coverage because the government plaintiffs did not suffer bodily injury. *Id.* The court said: "Insurers' argument that the government plaintiffs *themselves* suffered no bodily injury contradicts the policies' clearly defining 'because of bodily injury' to include damages 'claimed by any person or organization.'" *Id.* That same language is present in Publix's Policies, which clearly and broadly provide for *any organization* to be able to bring a covered claim. *Supra* § II.A.1.[9] The District Court did not even attempt to distinguish *McKesson*. (Doc 270 - Pg 30 n.14.)

---

[9] The *McKesson* court ultimately concluded that there was no coverage for the policyholder's claim because, under California law, which materially differs from Florida law, the allegations in the underlying suit did not constitute an "occurrence." *Id.* at 788–99. This finding was affirmed on appeal by the Ninth Circuit, which therefore, did "not reach the issue of whether the district court correctly determined that the Exemplar Suits allege a 'bodily injury.'" *AIU Ins. Co. v. McKesson Corp.*, 2024 WL 302182, at *4 (9th Cir. Jan. 26, 2024).

Another recent case examining identical policy language and underlying allegations also held that the policyholder was entitled to coverage. *Walmart Inc. v. ACE Am. Ins. Co.*, 2023 WL 9067386, at *1 (Ark. Cir. Ct. Dec. 29, 2023). In *Walmart*, the court found that the opioid lawsuits "allege that Walmart's dispensing and/or distribution of opioid medications was a direct proximate cause of bodily injuries to thousands of individuals .... [These] are claims seeking damages, in part, to compensate the [government] plaintiffs for the costs of treatment, care, and related services for the injured individuals." *Id.* at *7. Thus, the court held that Walmart was entitled to coverage because the opioid lawsuits seek liability from Walmart "because of" bodily injury, and the court noted that other courts "in West Virginia, Pennsylvania, California, and Illinois have recently reached this same conclusion in the opioid context, finding that the opioid-related lawsuits seek damages 'because of bodily injury,' even if their allegations do not specifically identify the particular individuals [who] were injured." *Id.* at *7–8.

The District Court claimed that Arkansas law applied in *Walmart* was distinguishable from Florida law because the *Walmart* court referenced the term "'aris[ing] from.'" (Doc 270 - Pg 31 n.14.) But review of the *Walmart* decision lays bare the error of that analysis. *Walmart* noted that Arkansas law distinguishes between claims that require bodily injury and those in which bodily injury is merely incidental in determining whether a claim seeks damages "because of" bodily injury.

2023 WL 9067386, at *7. This is no different from Florida law, and no different from arguments the Insurers attempted to rebut in this case. The Insurers cited the same cases here, in which bodily injury was merely incidental and not the driving force of the underlying complaints. But as the court in *Walmart* recognized, those cases are not applicable here, where bodily injury is at the core of the Opioid Lawsuits.

In *AmerisourceBergen Drug Corp. v. ACE American Insurance Co.*, 2020 W.V. Cir. LEXIS 3 (Nov. 23, 2020) ("*ABDC*"), the Circuit Court of West Virginia summarized nearly identical policy language to that used in the Publix Policies and also stressed that the policy at issue (just like the Policies here) does not contain any term or condition that excludes or limits insurance coverage (1) "if the plaintiff in the underlying lawsuit is a government entity," (2) "if the plaintiff in the underlying lawsuit did not directly suffer bodily injury," and (3) "for 'economic losses' or 'economic damages.'" *Id.* at *9–10. The 2013 Policies similarly have no such limitations; accordingly, the District Court erred in holding that the "causal connection between the specific injuries alleged and the damages the underlying plaintiffs seek in the opioid lawsuits is too attenuated to constitute damages 'because of bodily injury' under Florida law." (Doc 270 – Pg 28.) The District Court also made no attempt to distinguish *ABDC*. (*Id.* - Pg 30 n.14.)

Unlike the District Court, the *ABDC* court largely adopted the analysis in *H.D. Smith* that whether the state or an individual asserts the claim for damages makes no

difference for purposes of coverage, and it correctly declared that "the contrary argument was 'untethered to any language in the policy.'" 2020 W.V. Cir. LEXIS 3 at *19–20. The court then concluded that, "[a]s a matter of law, these claims establish that the State of West Virginia claimed damages in the WVAG Lawsuit for 'bodily injury.'" *Id.* at *23. That should be the outcome here too.

The federal district court in *Giant Eagle, Inc. v. American Guarantee & Liability Insurance Co.*, also arrived at the same conclusion:

> Despite the fact that the plaintiffs in the County lawsuits do not allege that *they* suffered bodily injury or property damage, they do seek damages *because* of bodily injury. Thus, the complaints in the County lawsuits allege bodily injuries, and arguably seek damages because of bodily injury, and the arguments to the contrary raised by [the insurers] are without merit.

499 F. Supp. 3d 147, 166 (W.D. Pa. 2020), *vacated on other grounds*, 2021 WL 6276267 (W.D. Pa. May 25, 2021). Again, the District Court did not even attempt to distinguish *Giant Eagle*. (Doc 270 - Pg 30 n.14.)

These decisions (*H.D. Smith*, *McKesson*, *Walmart*, *ABDC*, and *Giant Eagle*) all performed a careful analysis of identical, or substantively identical, policy language and underlying allegations as presented by Publix's Policies and the Opioid Lawsuits, and all held that those allegations seek damages "because of 'bodily injury.'" That same result is warranted here under the 2013 Policies under Florida law.

## 2.   Contrary Authority, Including *Anda*, Is Distinguishable and Contrary to Both Florida Law and the Express Language in the Policies

Only one decision from Florida touches on the issues presented here—*Anda*—but it is distinguishable in a number of ways from Publix's case.

First, the policy language at issue in *Anda* was different in the key respect that the Seventh Circuit identified in *H.D. Smith*: namely, most of the policies covered claims "*for* 'bodily injury'" rather than "*because of* 'bodily injury.'" *See* 90 F. Supp. 3d at 1311, 1316, 1318. The district court analyzed policies issued by four different insurers, three of which provided coverage only for claims seeking damages "*for* 'bodily injury.'" *See id.* The court analyzed that language first, and only at the end of its decision did it come to policies that included the language "because of 'bodily injury.'" The court then addressed the two concepts as one, concluding that there was no "appreciable" difference between "for" and "because of." *Id.* at 1318. Notably, the court failed to apply the principles of insurance policy construction that prohibit giving distinct terms the same meaning. *Id.*

Second, the authority the *Anda* district court relied on is not only distinguishable but was also distinguished by the very court that issued it in the first instance. The *Anda* court relied heavily on *Cincinnati Insurance Co. v. Richie Enterprises, LLC*, 2014 WL 3513211 (W.D. Ky. July 16, 2014), explaining that it found that decision "persuasive." 90 F. Supp. 3d at 1314. In that unreported decision,

the court based its ruling on the Seventh Circuit's decision in *Medmarc*. 2014 WL 3513211, at *5. As stated above, however, in *H.D. Smith*, the Seventh Circuit itself subsequently ruled that *Medmarc* is inapplicable to opioid liabilities because the claim in *Medmarc* did not allege *any* damages because of bodily injury, unlike the opioid lawsuits.[10] Thus, the *Anda* court merely continued an error that the *Richie* court made and that the Seventh Circuit subsequently corrected.

Finally, on appeal, this Court did not reach the district court's finding as to whether allegations in the opioid lawsuits at issue sought damages "for" or "because of" bodily injury but, instead, "conclude[d] that all the underlying claims, if covered at all, are embraced within" exclusions that are absent from Publix's Policies. *See* 658 F. App'x at 958–59. "The Travelers Products Exclusion omits coverage for bodily injury 'arising out of' Anda's products while the St. Paul Products Exclusion eliminates coverage for damage that 'results from' Anda's products." *Id.* at 958. In order to apply these exclusions, by their very terms, there necessarily needs to be "bodily injury" in the first instance. Moreover, it is well-settled under Florida law that exclusions are not analyzed unless there is coverage under the insuring agreement in the first instance. *See, e.g.*, *Sabal*, 786 F. App'x at 172–73; *Auto-*

---

[10] *Richie* also relied on another Seventh Circuit decision, *Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center*, 566 F.3d 689 (7th Cir. 2009), which, like *Medmarc*, did not allege any "'bodily injury to the residents'" but instead sought statutory damages for false billing. *Id.* at 694–95.

*Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (coverage is determined first and then exclusions are analyzed).[11]

Other decisions from other courts outside of Florida and the Eleventh Circuit, relied on heavily by the District Court, are equally unpersuasive. For example, the Supreme Court of Delaware's decision in *Rite Aid* suffers from the same flaws as *Richie* by relying heavily on the Seventh Circuit's decisions in *Medmarc* and *Momence Meadows*. 270 A.3d at 249–50. But, as stated above, the Seventh Circuit subsequently explained in *H.D. Smith* why *Medmarc* was inapplicable, and the same distinction applies to *Momence Meadows* because the allegations there did not allege bodily injury.

The *Rite Aid* decision was also subject to a vigorous dissent. The majority held that covered claims can only be brought by (1) the person injured, (2) a person recovering on behalf of a person injured, or (3) people or organizations who treated the person injured. 270 A.3d at 241. The dissent, though, bluntly pointed out that "[t]he policy does not contain such language. The policy covers damages claimed by *any* organization for the care of a person injured by Rite Aid." *Id.* at 256 (Vaughn, J., dissenting). The dissent also distinguished *Richie* and *Medmarc* for the same

---

[11] The policies remaining in the case at the time of this Court's decision in *Anda* were governed by California law, but California law has the same rule for policy analysis. *See, e.g.*, *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. Aug. 14, 2003).

reasons as the courts above, and it opined that *H.D. Smith* is "virtually indistinguishable from this case, and the result should be the same here." *Id.* at 256–58 (Vaughn, J., dissenting).

The decisions by the Supreme Court of Ohio in *Acuity v. Masters Pharmaceutical, Inc.*, 205 N.E.3d 460, 2022 WL 4086449, 2022-Ohio-3092 (Ohio Sept. 7, 2022), and the Sixth Circuit in *Westfield* are also based on flawed reasoning that should not be followed here. Those decisions also concluded that the government plaintiffs in the opioid lawsuits at issue did not seek damages for any bodily injury to any particular person. *See Acuity* ¶¶ 23, 25; *Westfield*, 57 F.4th at 563–64.

Those courts found that the myriad allegations of bodily injury, sickness, disease, and death caused by the opioid epidemic in the plaintiffs' communities merely "provide context" for the public nuisance and other causes of action. *See Acuity* ¶¶ 24, 36; *Westfield*, 57 F.4th at 562–63, 565. The *Acuity* majority decision specifically adopted *Rite Aid'*s three classes of covered plaintiffs, *id.* ¶ 36, and relied on *Richie* and *Momence Meadows*, *id.* ¶ 24, despite the fact that the *H.D. Smith* court distinguished those cases.

As in *Rite Aid*, the decision in *Acuity* was also the subject of a strong dissent by two justices, which stated that "the majority opinion ignores blackletter law and the plain language of the policies." *Acuity* ¶ 46 (Stewart, J., dissenting).

44

> The majority's assertion begs the question: what language would have been sufficient, when the policies expressly provide for that precise coverage (bodily injuries ... that occurred in the governmental entities' jurisdictions)? Nothing in the policy language requires that the claimant bringing the suit seek to recover the costs of the claimant's own bodily injury. And had [the insurer] wanted to exclude coverage for losses claimed by entities because of bodily injury suffered by third persons, or claims brought by governmental entities, it could have said so, but it did not.... And the policies themselves cover liabilities to organizations (like governmental entities), which cannot personally suffer "bodily injuries."

*Id.* ¶ 49 (Stewart, J., dissenting). The *Acuity* dissent found that the majority decision adopting the *Rite Aid* classes of covered plaintiffs "adds words to the policies; the language in the policies does not specify who, or whether a particular claimant, must suffer the bodily injury for coverage." *Id.* ¶ 50 (Stewart, J., dissenting). Like the Seventh Circuit, the dissent found the majority's interpretation "untethered to any policy language." *Id.* ¶ 53 (Stewart, J., dissenting).

The *Rite Aid*, *Acuity*, and *Westfield* courts improperly narrowed coverage by failing to apply the plain terms of the insurance contracts at issue. And those decisions were driven by considerations outside the four corners of the contract, which is improper under Florida law. *Supra* § III.C. The *Acuity* court specifically stated that it was concerned about the "floodgates" that could open if it found in favor of the policyholder. *Acuity* ¶ 39. But, as courts including the *H.D. Smith* and *ABDC* courts have found, adopting that interpretation "untethered to the policy

45

language" is contrary to principles of insurance policy interpretation. In fact, the policy language in these cases, and the language in the Publix Policies, specifically contradicts any effort to exclude coverage for the Opioid Lawsuits because the Policies specifically provide that covered claims for damages "because of 'bodily injury'" can be brought by "*any person or organization*." *Supra* § II.A.1.

Although not analyzed by the District Court, the Middle District of Georgia's recent decision in *Allied Property & Casualty Insurance Co. v. Bloodworth Wholesale Drugs, Inc.*, 727 F. Supp. 3d 1404 (M.D. Ga. 2024), was also decided in error, including for the reasons articulated in the policyholder's briefs in the appeal currently pending before this Court. The *Bloodworth* court found that the opioid lawsuits against Bloodworth "are seeking nonphysical related, monetary damages," and therefore do not seek damages "because of 'bodily injury'" under Georgia law. *Id.* at 1413–14. But this formulation is both wrong as a matter of fact (the extensive allegations of injury, sickness, and death in the Opioid Lawsuits are certainly "physical-related") and law. There is no basis for finding that a suit seeking "monetary damages" is somehow not covered under the policies issued to Publix or Bloodworth: that is precisely the type of damages that are covered under liability insurance policies. Publix's policies specifically cover suits seeking "damages" because of bodily injury, and the Policies expressly cover payment of those damages through settlements or judgments. Finally, *Bloodworth* is distinguishable in that the

ruling depended heavily on a combined analysis of the terms "because of 'bodily injury'" and the term "occurrence," *id.* at 1414–17, which are distinct terms, and the term "occurrence" was expressly not analyzed (despite being briefed by both sides) in the District Court's Order here. (Doc 270 - Pg 16.)

### 3. The District Court Ignored Nearly Identical Cases Regarding Firearm-Manufacturer Liabilities

Numerous firearm liability cases from around the country support a holding that the Opioid Lawsuits seek damages "because of 'bodily injury.'" In those cases, gun manufacturers sought defense coverage for litigations brought by government entities asserting the same or similar theories of liability asserted against Publix here (including negligence and public nuisance) and claiming that the manufacturers' practices led to a high number of crimes and bodily injuries. Several courts have held that such litigations brought by underlying entity plaintiffs sought damages because of bodily injury and the insurers had a duty to defend. *See, e.g.*, *Scottsdale Ins. Co. v. Nat'l Shooting Sports Found.*, 226 F.3d 642, 2000 WL 1029091 at *1–2 (5th Cir. 2000) (holding insurer had duty to defend litigation alleging that, "because of the bodily injuries to its citizens, the City of New Orleans had to incur additional costs" and rejecting insurer's "contention that the 'because of bodily injury' provision requires that the plaintiff seeking damages be the one who suffered the

bodily injury"); *SIG Arms Inc. v. Emps. Ins. of Wausau*, 122 F. Supp. 2d 255, 260–61 & n.4 (D.N.H. 2000).[12]

Rather than engage with these decisions and determine how its ruling here could be squared with this existing precedent, the District Court consigned them to a footnote and stated merely that "[t]his Court is not bound by these decisions, which were not decided under Florida law, and does not find them persuasive," but it failed to say why they are not persuasive or how Florida law is distinguishable. (Doc 270 - Pg 30 n.14.) These cases involve similar material facts, with government entity plaintiffs bringing claims based on underlying bodily injuries caused by a product sold by the policyholders. The insurers had a duty to defend in those firearm liability cases, and the result should be no different here.

## B.    If There Is Any Doubt as to Coverage, the Insurers Have a Duty to Defend

As the District Court acknowledged, it is a matter of black-letter Florida law on the duty to defend that "[a]ny doubts about the duty to defend must be resolved in favor of the insured." (Doc 270 - Pg 21 (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005)).) The District Court acknowledged that Florida

---

[12] This Court (and the Florida Supreme Court, through certified question) addressed a claim by a gun manufacturer for insurance coverage for similar lawsuits, and while there was found to be no coverage for that claim, it was based on a products exclusion absent from Publix's Policies. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 367 F.3d 1252 (11th Cir. 2004), *certified question answered*, 913 So. 2d 528 (Fla. 2005).

48

has a broad duty to defend, and that if any facts are alleged that fall within the Policies' coverage, the duty to defend is triggered. (*Id.* - Pgs 20–21.) The District Court acknowledged that the Opioid Lawsuits allege significant bodily injury to many individuals, allegedly caused in part by Publix. (*Id.* - Pgs 4–5.) The District Court acknowledged that federal and state courts around the country, including the Seventh Circuit, found that these same allegations satisfied substantively identical policy language requiring damage "because of bodily injury." (*Id.* - Pgs 29–31 & n.14.) Despite this, the District Court apparently had no doubt about the existence of the duty to defend in this case, including no doubt whether any of the facts alleged in the hundreds of pages of Opioid Lawsuit complaints even potentially fall within the Policies' coverage. For the reasons stated above, it is clear that the Insurers' duty to defend is triggered, but, at the very least, there is doubt about whether it is triggered, doubt that under Florida law *must* be resolved in favor of Publix and coverage. *Supra* § III.C.

## IV. THE INSURERS' INTERPRETATION IMPERMISSIBLY REWRITES SEVERAL POLICY PROVISIONS

It is a bedrock principle of insurance policy interpretation under Florida law that an insurance policy must be interpreted as a whole, "to give meaning to each provision of the contract so as not to render any provision meaningless." *U.S. Sugar*, 644 F. Supp. 3d at 1064. The Insurers' interpretation, adopted by the District Court,

erases several key aspects of the language of the 2013 Policies in direct contravention of Florida law.

First, in adopting the misguided approach of several courts that have defined distinct classes of plaintiffs who can bring covered claims for damages arising from opioid injuries, the District Court effectively edited the language in each of the Policies that "Damages because of 'bodily injury' include damages claimed by *any person or organization* for care, loss of services or death resulting at any time from the 'bodily injury.'" (*See* Doc 270 - Pg 26–28.) The governmental entity and hospital plaintiffs that sued Publix are certainly "organizations," and their claims for damages because of "bodily injury" should be covered under the Policies. The District Court's decision to declare these types of organizations outside the Policies' coverage when bringing this type of claim impermissibly rewrites this express provision.

Second, the District Court's Order removes language from the ACE Excess Policy's "Duties in the Event of 'Occurrence', Claim or 'Suit'" provision. That provision requires Publix to provide, "*[t]o the extent possible* ... [t]he names and addresses of any injured persons and witnesses." (Doc 177-3 - Pg 18 § VI(F)(1) (emphasis added).) Under the District Court's approach, when each injured person needs to be specifically identified in the underlying complaint, the words "to the extent possible" would be erased because it *always* must be possible, indeed it is *required*, for Publix to be able to identify the specific person injured. By including

the modifier "to the extent possible," the ACE Excess Policy clearly contemplates that it may *not* be possible for Publix to provide that information, such as in a case in which the individual injured parties, while doubtless existing, need not be named in the plaintiff's complaint, or where the number of injuries is significant. That is precisely the nature of the Opioid Lawsuit complaints.

Finally, the District Court's Order renders superfluous the language in the 2013 Policies' pollution exclusions that specifically excludes certain claims "by or on behalf of a governmental authority." (*See* Doc 177-1 - Pg 8 § I(2)(f)(2); Doc 177-3 - Pg 55, Endt. 20.) Under the District Court's Order, a claim by a governmental authority to recover for bodily injury within its jurisdiction caused by pollutants would be too "attenuated" or "circuitous" (Doc 270 - Pg 28) to be "because of 'bodily injury,'" and therefore would not be covered in the first place and would not need to be excluded. By excluding claims by governmental authorities in that specific circumstance, the pollution exclusions demonstrate that coverage for such claims exists unless specifically excluded, consistent with Florida's interpretation of "because of" language in insuring agreements. *See Thomas*, 273 So. 2d at 119. Insurers did not specifically exclude coverage for opioid liabilities until 2018 (*see infra* § V), meaning such liabilities were covered under the 2013 Policies.

51

## V. THE INSURERS CONCEDED THEIR DUTY TO DEFEND BY ADDING OPIOID EXCLUSIONS TO THEIR POLICIES

In 2018, the Insurers added the Opioid Exclusion into their policies. This specific exclusionary language achieves what the Insurers are now trying to retroactively achieve through litigation—it carves out a specific type of plaintiffs and claims (those in the Opioid Lawsuits) from the Polices' coverage grant. The District Court allowed the Insurers to achieve that goal: through its holding, it added the Opioid Exclusion to all prior Policies, finding that this specific type of claim is not covered.

The District Court incorrectly found that the Opioid Exclusion "cannot be relied upon to create coverage where the plain language of a policy demonstrates that coverage does not exist." (Doc 270 - Pg 32.) The District Court relied on *Siegle v. Progressive Consumers Insurance Co.*, 819 So. 2d 732, 740 (Fla. 2002), for this proposition, but in *Siegle*, the policyholder argued that because there was no exclusion stating that the diminished value of her fully repaired car was not covered, it must be covered. Unlike this case, it did not involve the insurer subsequently adding an exclusion for diminished value while arguing that the diminished value it sought to exclude was never actually covered in the first place. The Insuring Agreement of Publix's Policies provides, at the very least, defense coverage for the Opioid Lawsuits because they present the possibility of damages against Publix "because of 'bodily injury.'" Publix does not need to create coverage; the Insurers

need to *exclude* that coverage, which they did in 2018 after the Opioid Lawsuits began to be filed. However, that exclusion is not present in the Policies from 1995-2018 that are the subject of this action, and those Policies provide coverage for the Opioid Lawsuits.

The District Court gives the game away by finding that the Opioid Exclusion "may have been intended to eliminate any argument that [the Opioid Lawsuits] were covered." (Doc 270 - Pg 32.) The existence of arguable or possible coverage for a given lawsuit is all that is required to trigger an insurer's defense obligation under Florida law. *See, e.g.*, *S.-Owners Ins. Co.*, 2024 WL 5338171, at *2, *4. Publix has argued that it is at the very least possible or arguable that the Opioid Lawsuits are covered under the Policies, meaning the Insurers have an obligation to defend Publix or cover its defense costs. The District Court acknowledged that the existence of that argument is why the Opioid Exclusion would be necessary, and thus acknowledged the prerequisite for defense coverage under the Policies.

The Policies' insuring agreement creates coverage—coverage that Publix's Opioid Lawsuit claims fall squarely within. There is no Opioid Exclusion in the 2013 Policies, and Publix does not seek coverage under any policy with an Opioid Exclusion. Without an Opioid Exclusion in the 2013 Policies, the Court is left with the language that creates the possibility for coverage for the Opioid Lawsuits that the Insurers did not seek to extinguish until years later. That language requires that

Publix's motion be granted and that the Insurers honor their contractual obligation to defend Publix or cover its defense costs.

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed, Publix's motion for partial summary judgment for a declaration that the 2013 Insurers have an obligation to provide coverage for Publix's defense costs for the Opioid Lawsuits should be granted, the Declaratory Judgment (Doc 284) and Judgment (Doc 285) that the District Court entered based on its Order should be vacated, and this matter should be remanded to the District Court for further proceedings to determine the Insurers' obligation to provide coverage for Publix's indemnity costs in the Opioid Lawsuits.

DATED: June 20, 2025

Respectfully submitted,

/s/ *Kenneth H. Frenchman*

ROBERT H. FRIEDMAN, ESQ.
FRIEDMAN P.A.
340 Royal Poinciana Way
Suite 317-202
Palm Beach, FL 33480
(561) 800-2110
rob@friedmanpa.com

KENNETH H. FRENCHMAN, ESQ.
ALEXANDER M. SUGZDA, ESQ.
JASON D. MEYERS, ESQ.
COHEN ZIFFER FRENCHMAN
& MCKENNA LLP
1325 Avenue of the Americas
New York, NY 10019
(212) 584-1890
kfrenchman@cohenziffer.com
asugzda@cohenziffer.com
jmeyers@cohenziffer.com

*Attorneys for Plaintiff - Counter Defendant - Appellant Publix Super Markets, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,961 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: June 20, 2025                          /s/ *Kenneth H. Frenchman*
                                                    Kenneth H. Frenchman

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June, 2025, I caused this Appellant's Opening Brief to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ *Kenneth H. Frenchman*
Kenneth H. Frenchman