## No. 25-11185

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

PUBLIX SUPER MARKETS, INC.,
*Plaintiff - Counter Defendant - Appellant,*

*v.*

ACE PROPERTY AND CASUALTY INSURANCE COMPANY, *et al.*,
*Defendants-Appellees,*

GREAT AMERICAN ASSURANCE COMPANY, *et al.*,
*Defendants - Counter Claimants - Appellees.*

Appeal from the United States District Court
for the Middle District of Florida
No. 8:22-cv-02569-CEH-AEP

### APPELLEES' JOINT RESPONSE BRIEF

Michael S. Shuster
Daniel M. Sullivan
Blair E. Kaminsky
Rebecca T. Moonitz
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue
New York, N.Y. 10017
(646) 837-5151
mshuster@hsgllp.com
dsullivan@hsgllp.com
bkaminsky@hsgllp.com
RMoonitz@hsgllp.com

Jonathan D. Hacker
Jenya Godina
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
jhacker@omm.com
jgodina@omm.com

*Attorneys for Defendant-Appellee ACE Property & Casualty Insurance Co.*

*(Additional Counsel Listed on Inside Cover)*

Robert Mangino
CLYDE & CO. US LLP
340 Mt. Kemble Avenue, Suite 300
Morristown, N.J. 07960
(973) 210-6700
robert.mangino@clydeco.us

Susan Koehler Sullivan
CLYDE & CO. US LLP
355 S. Grand Ave, Suite 1400
Los Angeles, CA 90071
(213) 358-7600
susan.sullivan@clydeco.us

Laura E. Besvinick
CLYDE & CO. US LLP
1221 Brickell Ave, Suite 1600
Miami, FL 33131
(305) 329-1844
laura.besvinick@clydeco.us

*Additional Attorneys for Defendant-Appellee ACE Property & Casualty Insurance Co.*

Kathryn Guinn
DENTONS US LLP
1900 16th Street, Suite 1350
Denver, CO 80202
(303) 634-4000
katy.guinn@dentons.com

*Attorney for Defendants-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.*

James N. Hurley
FOWLER WHITE BURNETT, P.A.
Brickell Arch, 14th Floor
1395 Brickell Avenue
Miami, FL 33131
(305) 789-9200
jhurley@fowler-white.com

Bryce L. Friedman
Joshua C. Polster
Matthew C. Penny
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
(212) 455-2000
bfriedman@stblaw.com
joshua.polster@stblaw.com
matthew.penny@stblaw.com

*Attorneys for Defendant-Appellee St. Paul Fire & Marine Insurance Company*

Melissa A. Gillinov
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Suite 1000
Coral Gables, FL 33134
(305) 428-5063
mgillinov@hinshawlaw.com

Adam H. Fleischer
Joshua A. Boggioni
Kevin F. Harris
BATESCAREY LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100
afleischer@batescarey.com
jboggioni@batescarey.com
kharris@batescarey.com

Karen M. Dixon
Rebecca C. Dunn
SKARZYNSKI MARICK & BLACK LLP
500 W. Madison Street, Suite 3600
Chicago, IL 60661
(312) 946-4200
kdixon@skarzynski.com
rdunn@skarzynski.com

Melissa A. Gillinov
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Suite 1000
Coral Gables, FL 33134
(305) 428-5063
mgillinov@hinshawlaw.com

*Attorneys for Defendants-Appellees
American Guarantee and Liability
Insurance Company and Steadfast
Insurance Company*

John D. Russell
Kaylee M. Chabarek
STOLER RUSSELL KEENER VERONA P.A.
One Tampa City Center, Suite 3100
201 North Franklin Street
Tampa, FL 33602
(813) 609-3200
jrussell@stolerrussell.com
kchabarek@stolerrussell.com

William C. Joern
Douglas M. DeWitt
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Ave., Suite 3400
Chicago, IL 60647
(312) 784-5400
wjoern@hww-law.com
ddewitt@hww-law.com

*Attorneys for Defendants-Counter
Claimants-Appellees Great American
Assurance Company, Great American
Insurance Company of New York, and
Great American Spirit Insurance
Company*

Matthew J. Lavisky
Latasha Scott
BUTLER WEIHMULLER KATZ CRAIG,
LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
(813) 281-1900
mlavisky@butler.legal
lscott@butler.legal

Robert A. Kole
John C. Calhoun
CHOATE HALL & STEWART LLP
2 International Place
Boston, MA 02110
(617) 248-5000
rkole@choate.com

*Attorneys for Defendants-Appellees
Liberty Insurance Underwriters, Inc.,
Liberty Mutual Fire Insurance
Company, Liberty Surplus Insurance
Corporation, and the Ohio Casualty
Insurance Company*

*Attorneys for Defendants-Appellees*
*National Surety Corporation and*
*Fireman's Fund Insurance Company*

James P. Ruggeri
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
1875 K Street, Suite 800
Washington, D.C. 20006-125
(202) 984-1400
jruggeri@ruggerilaw.com
arolain@ruggerilaw.com

Pedro E. Hernandez
Daniel C. Shatz
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Floor 10
Coral Gables, FL 33134
(305) 358-7747
phernandez@hinshawlaw.com
dshatz@hinshawlaw.com

*Attorneys for Defendants-Appellees*
*Hartford Fire Insurance Company,*
*Navigators Specialty Insurance*
*Company, and Twin City Fire Insurance*
*Company*

Andrew L. Margulis
ROPERS MAJESKI PC
800 Third Avenue, 29th Floor
New York, N.Y. 10022
(646) 454-3242
andrew.margulis@ropers.com

Joel D. Adler
MARLOW, ADLER, ABRAMS, NEWMAN &
LEWIS
4000 Ponce de Leon Blvd, Suite 70
Coral Gables, FL 33146
(305) 446-0500
jadler@marlowadlers.com

*Attorneys for Defendant-Appellee*
*National Fire & Marine Insurance*
*Company*

No. 25-11185

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendants-Appellees, pursuant to Eleventh Circuit Rule 26.1-1(a)(2), submit this Certificate of Interested Persons and Corporate Disclosure Statement. The following parties have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

ACE Property & Casualty Insurance Company (Defendant-Appellee)

Adler, Joel D. (counsel for Defendant-Appellee National Fire & Marine Insurance Company)

Allianz SE (ALIZF) (identified by Defendant-Appellees Fireman's Fund Insurance Company and National Surety Corporation)

American Financial Group, Inc. (AFG) (identified by Defendant-Appellees Great American Assurance Company, Great American Insurance Company of New York, and Great American Spirit Insurance Company)

American Guarantee and Liability Insurance Company (Defendant-Appellee)

AXA SA. (identified by Defendant-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.)

BatesCarey LLP (counsel for Defendant-Appellees Great American Assurance Company, Great American Insurance Company of New York,

No. 25-11185

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

> and Great American Spirit Insurance Company)

Berkshire Hathaway, Inc. (BRK) (identified by Defendant-Appellee National Fire
> & Marine Insurance Company)

Besvinick, Laura E. (counsel for Defendant-Appellees Great American Assurance
> Company, Great American Insurance Company of New York, and Great
> American Spirit Insurance Company)

Boggioni, Joshua A. (counsel for Defendant-Appellees Great American Assurance
> Company, Great American Insurance Company of New York, and Great
> American Spirit Insurance Company)

Butler Weihmuller Katz Craig, LLP (counsel for Defendant-Appellees Liberty
> Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company,
> Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance
> Company)

Calhoun, John (counsel for Defendant-Appellees Liberty Insurance Underwriters,
> Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance
> Corporation, and The Ohio Casualty Insurance Company)

Central and Second Insurance Company Morning Song, LLC (identified by
> Plaintiff-Appellant Publix Super Markets, Inc.)

Chabarek, Kaylee (counsel for Defendant-Appellees Fireman's Fund Insurance
> Company and National Surety Corporation)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

CHM Landing Station, LLC (identified by Plaintiff-Appellant Publix Super

> Markets, Inc.)

Choate, Hall & Stewart LLP (counsel for Defendant-Appellees Liberty Insurance

> Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus
>
> Insurance Corporation, and The Ohio Casualty Insurance Company)

Chubb Group Holdings Inc. (identified by Defendant-Appellee ACE Property &

> Casualty Insurance Company)

Chubb INA Holdings LLC (identified by Defendant-Appellee ACE Property &

> Casualty Insurance Company)

Chubb Limited (CB) (identified by Defendant-Appellee ACE Property & Casualty

> Insurance Company)

Clyde & Co. LLP (counsel for Defendant-Appellee ACE Property & Casualty

> Insurance Company)

Cohen Ziffer Frenchman & McKenna, LLP (counsel for Plaintiff-Appellant Publix

> Super Markets, Inc.)

Dentons US, LLP (counsel for Defendant-Appellees Indian Harbor Insurance

> Company and XL Insurance America, Inc.)

DeWitt, Douglas M. (counsel for Defendant-Appellees Fireman's Fund

> Insurance Company and National Surety Corporation)

Dixon, Karen M. (counsel for Defendant-Appellees American Guarantee and

> Liability Insurance Company and Steadfast Insurance Company)

No. 25-11185

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Dunn, Rebecca (counsel for Defendant-Appellees American Guarantee and

Liability Insurance Company and Steadfast Insurance Company)

Employers Insurance Company of Wausau (identified by Defendant-Appellee The

Ohio Casualty Insurance Company)

EXEL Holdings Limited (identified by Defendant-Appellees Indian Harbor

Insurance Company and XL Insurance America, Inc.)

Fireman's Fund Insurance Company (Defendant-Appellee)

Fleischer, Adam (counsel for Defendant-Appellees Great American Assurance

Company, Great American Insurance Company of New York, and Great

American Spirit Insurance Company)

Fowler White Burnett, P.A. (counsel for Defendant-Appellee St. Paul Fire and

Marine Insurance Company)

Frenchman, Kenneth H. (counsel for Plaintiff-Appellant Publix Super Markets,

Inc.)

Friedman, Bryce L. (counsel for Defendant-Appellee St. Paul Fire and Marine

Insurance Company)

Friedman P.A. (counsel for Plaintiff-Appellant Publix Super Markets, Inc.)

Friedman, Robert H. (counsel for Plaintiff-Appellant Publix Super Markets, Inc.)

Gillinov, Melissa A. (counsel for Defendant-Appellees American Guarantee and

Liability Insurance Company and Steadfast Insurance Company)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Glatzer, Phillip (counsel for Defendant-Appellee National Fire & Marine Insurance

   Company)

Godina, Jenya (counsel for Defendant-Appellee ACE Property & Casualty

   Insurance Company)

Gould, Nicole D. (counsel for Defendant-Appellees The Hartford Fire Insurance

   Company, Navigators Specialty Insurance Company, and Twin City Fire

   Insurance)

Great American Assurance Company (Defendant-Appellee)

Great American Insurance Company (identified by Defendant-Appellees Great

   American Assurance Company, Great American Insurance Company of

   New York, and Great American Spirit Insurance Company)

Great American Insurance Company of New York (Defendant-Appellee)

Great American Spirit Insurance Company (Defendant-Appellee)

Greenwich Insurance Company, Inc. (identified by Defendant-Appellee XL

   Insurance America, Inc.)

Guinn, Kathryn Maynard (counsel for Defendant-Appellees Indian Harbor

   Insurance Company and XL Insurance America, Inc.)

Hacker, Jonathan D. (counsel for Defendant-Appellee ACE Property &

   Casualty Insurance Company)

Harris, Kevin (counsel for Defendant-Appellees Great American Assurance

   Company, Great American Insurance Company of New York, and Great

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

American Spirit Insurance Company)

Hartford Insurance Group, Inc. (identified by Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance)

Heidlage, Benjamin (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Hernandez, Pedro E. (counsel for Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance)

Hinkhouse Williams Walsh LLP (counsel for Defendant-Appellees Fireman's Fund Insurance Company and National Surety Corporation)

Hinshaw & Culbertson LLP (counsel for Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance; counsel for Defendant-Appellees American Guarantee and Liability Insurance Company and Steadfast Insurance Company)

Holwell Shuster & Goldberg LLP (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Honeywell, Charlene Edwards, Sr. U.S.D.J. (Honorable)

Hurley, James N. (counsel for Defendant-Appellee St. Paul Fire and Marine Insurance Company)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

INA Corporation (identified by Defendant-Appellee ACE Property & Casualty Insurance Company)

INA Financial Corporation (identified by Defendant-Appellee ACE Property & Casualty Insurance Company)

INA Holdings Corporation (identified by Defendant-Appellee ACE Property & Casualty Insurance Company)

Indian Harbor (identified by Defendant-Appellee Indian Harbor Insurance Company)

Indian Harbor Insurance Company (Defendant-Appellee)

Joern, William C. (counsel for Defendant-Appellees Fireman's Fund Insurance Company and National Surety Corporation)

Kaminsky, Blair (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Kammer, Ronald (former counsel for Defendant-Appellees Great American Assurance Company, Great American Insurance Company of New York, Great American Spirit Insurance Company; former counsel for American Guarantee and Liability Insurance Company, and Steadfast Insurance Company)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Kole, Robert A. (counsel for Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Lavisky, Matthew John (counsel for Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Liberty Insurance Underwriters, Inc. (Defendant-Appellee)

Liberty Mutual Fire Insurance Company (Defendant-Appellee)

Liberty Mutual Group Inc. (identified by Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Liberty Mutual Holding Company Inc. (identified by Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Liberty Mutual Insurance Company (identified by Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Liberty Surplus Insurance Corporation (Defendant-Appellee)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

LMHC Massachusetts Holdings Inc. (identified by Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Mangino, Robert M. (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Margulis, Andrew L. (counsel for Defendant-Appellee National Fire & Marine Insurance Company)

Meyers, Jason D. (counsel for Plaintiff-Appellant Publix Super Markets, Inc.)

Moonitz, Rebecca T. (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

National Fire & Marine Insurance Company (Defendant-Appellee)

National Surety Corporation (Defendant-Appellee)

Navigators Group, Inc. (identified by Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance)

Navigators Insurance Company (identified by Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance)

Navigators Specialty Insurance Company (Defendant-Appellee)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Ohio Casualty Corporation (identified by Defendant-Appellee The Ohio Casualty

Insurance Company)

O'Melveny & Myers LLP (counsel for Defendant-Appellee ACE Property &

Casualty Insurance Company)

Park, Jung (counsel for Defendant-Appellee National Fire & Marine Insurance

Company)

Peerless Insurance Company (identified by Defendant-Appellee The Ohio Casualty

Insurance Company)

Penny, Matthew C. (counsel for Defendant-Appellee St. Paul Fire and Marine

Insurance Company)

Polster, Joshua C. (counsel for Defendant-Appellee St. Paul Fire and Marine

Insurance Company)

Porcelli, Anthony Edward (Honorable)

PSM F1, Inc. (identified by Plaintiff-Appellant Publix Super Markets, Inc.)

PSM Procurement Inc. (identified by Plaintiff-Appellant Publix Super Markets,
Inc.)

PTO, LLC (identified by Plaintiff-Appellant Publix Super Markets, Inc.)

Publix Alabama, LLC (identified by Plaintiff-Appellant Publix Super Markets,

Inc.)

Publix Apron's Event Planning and Catering, LLC (identified by Plaintiff-

Appellant Publix Super Markets, Inc.)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Publix Asset Management Company (identified by Plaintiff-Appellant Publix

Super Markets, Inc.)

Publix North Carolina Employee Services, LLC (identified by Plaintiff-Appellant

Publix Super Markets, Inc.)

Publix North Carolina, LP (identified by Plaintiff-Appellant Publix Super Markets,

Inc.)

Publix Super Markets, Inc. (Plaintiff-Appellant)

Publix Tennessee, LLC (identified by Plaintiff-Appellant Publix Super Markets,

Inc.)

Real Sub, LLC (identified by Plaintiff-Appellant Publix Super Markets, Inc.)

Robinson, Daniel B. (counsel for Defendant-Appellee ACE Property & Casualty

Insurance Company)

Rolain, Annette (counsel for Defendant-Appellees The Hartford Fire Insurance

Company, Navigators Specialty Insurance Company, and Twin City Fire

Insurance Company)

Ropers Majeski PC (counsel for Defendant-Appellee National Fire & Marine

Insurance Company)

Ruggeri, James Pio (counsel for Defendant-Appellees The Hartford Fire Insurance

Company, Navigators Specialty Insurance Company, and Twin City Fire

Insurance Company)

Ruggeri Parks Weinberg LLP (counsel for Defendant-Appellees The Hartford

Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance Company)

Russell, John D (counsel for Defendant-Appellees Fireman's Fund Insurance Company and National Surety Corporation)

Scott, Latasha Lordes (counsel for Defendant-Appellees Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company)

Sgarro, Andrew D. (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Shatz, Daniel C. (counsel for Defendant-Appellees The Hartford Fire Insurance Company, Navigators Specialty Insurance Company, and Twin City Fire Insurance Company)

Shuster, Michael S. (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Simpson Thacher & Bartlett LLP (counsel for Defendant-Appellee St. Paul Fire and Marine Insurance Company)

Skarzynski Marick & Black LLP (counsel for Defendant-Appellees American Guarantee and Liability Insurance Company and Steadfast Insurance Company)

St. Paul Fire and Marine Insurance Company (Defendant-Appellee)

Steadfast Insurance Company (Defendant-Appellee)

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

Stoler Russell Keener Verona PA (counsel for Defendant-Appellees Fireman's Fund Insurance Company and National Surety Corporation)

Sugzda, Alexander M. (counsel for Plaintiff-Appellant Publix Super Markets, Inc.)

Sullivan, Daniel Martin (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

Sullivan, Susan K. (counsel for Defendant-Appellee ACE Property & Casualty Insurance Company)

The Hartford Fire Insurance Company (Defendant-Appellee)

The Ohio Casualty Insurance Company (Defendant-Appellee)

The Travelers Companies, Inc. (TRV) (identified by Defendant-Appellee St. Paul Fire and Marine Insurance Company)

Twin City Fire Insurance Company (Defendant-Appellee)

XL America, Inc. (identified by Defendant-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.)

XL Bermuda Ltd. (identified by Defendant-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.)

XL Financial Holdings (Ireland) Limited (identified by Defendant-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.)

XL Group Ltd. (identified by Defendant-Appellees Indian Harbor Insurance Company and XL Insurance America, Inc.)

XL Insurance America, Inc. (Defendant-Appellee)

No. 25-11185

*Publix Super Markets, Inc. v. ACE Property & Casualty Insurance Co., et al.*

XLIT Ltd. (identified by Defendant-Appellees Indian Harbor Insurance Company

and XL Insurance America, Inc.)

XL Reinsurance America, Inc. (identified by Defendant-Appellee XL Insurance

America, Inc.)

XL Specialty Insurance Company (identified by Defendant-Appellees Indian

Harbor Insurance Company and XL Insurance America, Inc.)

Zurich American Insurance Company (identified by Defendant-Appellees

American Guarantee and Liability Insurance Company and Steadfast

Insurance Company)

Zurich Holding Company of America, Inc. (identified by Defendant-Appellees

American Guarantee and Liability Insurance Company and Steadfast

Insurance Company)

Zurich Insurance Company Ltd (identified by Defendant-Appellees American

Guarantee and Liability Insurance Company and Steadfast Insurance

Company)

Zurich Insurance Group Ltd (identified by Defendant-Appellees American

Guarantee and Liability Insurance Company and Steadfast Insurance

Company)

By: /s/ *Jonathan D. Hacker*
Jonathan D. Hacker
*Counsel for Defendant-Appellee ACE*
*Property & Casualty Ins. Co.*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees (the "Insurers")[1] acknowledge that, pursuant to this Court's order dated August 5, 2025, oral argument in this case will be held concurrently with argument in *Allied Property & Casualty Insurance Co., et al. v. Bloodworth Wholesale Drugs, Inc.*, No. 24-11398.

---

[1] ACE Property and Casualty Insurance Co. ("ACE"); Hartford Fire Insurance Co., Navigators Specialty Insurance Co., and Twin City Fire Insurance Co. (together, "Hartford"); Liberty Insurance Underwriters, Inc. ("LIUI"), Liberty Mutual Fire Insurance Company, Liberty Surplus Insurance Corp., and the Ohio Casualty Insurance Company (together, "Liberty Mutual"); National Surety Corporation and Fireman's Fund Insurance Co. (together, "Allianz"); Great American Assurance Co., Great American Insurance Company of New York, and Great American Spirit Insurance Co. (together, "Great American"); Indian Harbor Insurance Co. and XL Insurance America, Inc. (together, "XL"); American Guarantee and Liability Insurance Co. and Steadfast Insurance Co. (together, "Zurich"); National Fire & Marine Insurance Co. ("National Fire"); and St. Paul Fire & Marine Insurance Co. ("St. Paul") (collectively, "the Insurers").

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.................................................................3

STATEMENT OF THE ISSUE.......................................................................3

STATEMENT OF THE CASE.........................................................................3

    A.      Factual Background..........................................................................3

          1.     The Opioid Lawsuits........................................................3

          2.     The Policies......................................................................5

    B.      Procedural History...........................................................................8

STANDARD OF REVIEW ...........................................................................11

SUMMARY OF THE ARGUMENT .............................................................11

ARGUMENT ...............................................................................................14

I.      THE OPIOID LAWSUITS DO NOT SEEK DAMAGES "BECAUSE OF" OR "FOR" BODILY INJURY .............................................................15

    A.      The Policies Cover Only Suits Seeking Damages For Specific Bodily Injuries To Particular People...............................................17

          1.     The Policies' Coverage Grant Does Not Apply To Suits Seeking Compensation For Purely Economic Losses Not Derivative Of Specific Bodily Injuries ...................................17

          2.     Additional Policy Provisions Confirm That Covered Suits Must Seek To Establish Liability For Particular Bodily Injuries To Individuals .................................................24

    B.      There Is No Coverage For The Opioid Lawsuits, Which Seek to Recover Only Generalized Economic Losses....................................28

    C.      Coverage For The Opioid Lawsuits Would Be Incompatible With Foundational Principles Of Insurance .......................................32

II.     PUBLIX'S CONTRARY ARGUMENTS LACK MERIT............................35

    A.      Publix Fails To Establish The Requisite Connection Between Bodily Injury And The Damages Sought In The Opioid Lawsuits......................................................................................35

    B.      Publix Relies On Unpersuasive And Inapposite Cases....................40

## TABLE OF CONTENTS
(continued)

|  |  |  | **Page** |
|---|---|---|---|
|  | 1. | Publix's Argument Rests On Flawed And Discredited Decisions | 41 |
|  | 2. | Publix Fails In Its Efforts To Distinguish Or Critique The Better-Reasoned Precedents That Reject Coverage For Opioid Suits | 47 |
|  | C. | Publix Misunderstands The Policy Provisions It Invokes | 50 |
|  | D. | Publix's Arguments Based On The Breadth Of The Duty To Defend Are Meritless | 53 |
| III. | | CERTIFICATION TO THE FLORIDA SUPREME COURT IS NOT NECESSARY | 54 |
| | | CONCLUSION | 55 |

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

\*ACE Am. Ins. Co. v. Rite Aid Corp.,
  270 A.3d 239 (Del. 2022) ............................................................................ passim

\*Acuity v. Masters Pharm., Inc.,
  205 N.E.3d 460 (Ohio 2022)........................................................................ passim

AIU Ins. Co. v. McKesson Corp.,
  598 F. Supp. 3d 774 (N.D. Cal. 2022), aff'd on other grounds, 2024 WL
  302182 (9th Cir. Jan. 26, 2024) ................................................................. 43, 44

Allied Prop. Cas. Ins. Co. v. Bloodworth Wholesale Drugs, Inc.,
  727 F. Supp. 3d 1404 (M.D. Ga. 2024) ........................................... 16, 29, 34, 50

AmerisourceBergen Drug Corp. v. ACE Am. Ins. Co.,
  2020 W.V. Cir. LEXIS 3 (W. Va. Cir. Ct. Nov. 23, 2020) ................................43

Atkinson v. Dollar Rent-A-Car, Inc.,
  525 So. 2d 976 (Fla. Dist. Ct. App. 1988) ................................................. 18, 35

Battery Web, Inc. v. Md. Cas. Co.,
  2006 WL 8431024 (S.D. Fla. Jan. 26, 2006) .....................................................54

C.A. Fielland, Inc. v. Fid. & Cas. Co. of N.Y.,
  297 So. 2d 122 (Fla. Dist. Ct. App. 1974) ........................................................32

Cafe Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.,
  536 F. Supp. 3d 1291 (S.D. Fla. 2021), aff'd, 2022 WL 1510441 (11th
  Cir. May 13, 2022)............................................................................................52

Chicago Title Ins. Co. v. St. Paul Mercury Ins. Co.,
  2011 WL 6276097 (Cal. Ct. App. Dec. 16, 2011)..............................................48

Cincinnati Ins. Co. v. H.D. Smith, L.L.C.,
  829 F.3d 771 (7th Cir. 2016)..................................................................... 41, 42

Cincinnati Ins. Co. v. Richie Enters. LLC,
  2014 WL 3513211 (W.D. Ky. July 16, 2014) ....................................................37

Daker v. Barnes,
  2024 WL 3373557 (11th Cir. July 11, 2024).....................................................39

Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.,
  711 So. 2d 1135 (Fla. 1998).............................................................................35

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Diamond State Ins. Co. v. Chester-Jensen Co.*,
611 N.E.2d 1083 (Ill. App. Ct. 1993) ........................................................ 23, 24

*Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*,
73 F.4th 322 (5th Cir. 2023) ...................................................................22

*Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
379 F. App'x 906 (11th Cir. 2010) .........................................................54

*Emps. Cas. Ins. Co. v. Foust*,
29 Cal. App. 3d 382 (1972)......................................................................21

*Evanto v. Fed. Nat'l Mortg. Ass'n*,
814 F.3d 1295 (11th Cir. 2016) ..............................................................25

*Garcia v. Fed. Ins. Co.*,
969 So. 2d 288 (Fla. 2007).......................................................................18

*Giant Eagle, Inc. v. Am. Guar. & Liability Ins. Co.*,
499 F. Supp. 3d 147 (W.D. Pa. 2020), *vacated on other grounds*, 2021
WL 6276267 (W.D. Pa. May 25, 2021)..................................................43

*Gov't Emps. Ins. Co. v. Encelewski*,
1995 WL 25427 (D. Alaska Jan. 13, 1995) ...........................................21

*Great Am. Assurance Co. v. Elliott*,
846 F. Supp. 2d 1258 (M.D. Fla. 2012)..................................................20

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*,
420 F.3d 1317 (11th Cir. 2005) ..............................................................18

*Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr.,
Inc.*,
566 F.3d 689 (7th Cir. 2009)....................................................................23

\**In re CVS Opioid Ins. Litig.*,
-- A.3d --, 2025 WL 2383644 (Del. Aug. 18, 2025).................................. passim

*In re CVS Opioid Ins. Litig.*,
301 A.3d 1194 (Del. Super. Ct. 2023), *aff'd*, 2025 WL 2383644 (Del.
Aug. 18, 2025)..........................................................................................37

*In re SRC Holding Corp.*,
545 F.3d 661 (8th Cir. 2008).....................................................................53

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Int. of M.R.*,
327 So. 3d 848 (Fla. Dist. Ct. App. 2021) ...........................................25

*Jennings v. BIC Corp.*,
181 F.3d 1250 (11th Cir. 1999) ................................................. 54, 55

*Kaady v. Mid-Continent Cas. Co.*,
790 F.3d 995 (9th Cir. 2015)...............................................................27

*Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*,
450 F. Supp. 2d 1311 (M.D. Fla. 2006).............................................19

*Legion Indem. Co. v. CareStat Ambulance, Inc.*,
152 F. Supp. 2d 707 (E.D. Pa. 2001) ................................................21

*Liberty Mut. Fire Ins. Co. v. SoClean, Inc.*,
2024 WL 1193823 (D.N.H. Mar. 6, 2024) .........................................46

*Louisiana ex rel. Guste v. M/V TESTBANK*,
752 F.2d 1019 (5th Cir. 1985) ...........................................................34

*Mass. Bay Ins. Co. v. Faber Bros., Inc.*,
2007 WL 1029366 (D. Ill. Mar. 30, 2007).........................................46

*Medmarc Cas. Ins. Co. v. Avent Am., Inc.*,
612 F.3d 607 (7th Cir. 2010)......................................................... 22, 42

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
782 F. Supp. 2d 1047 (C.D. Cal. 2011) ..............................................34

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Mead Johnson & Co.*,
735 F.3d 539 (7th Cir. 2013).............................................................34

*Nationwide Mut. Fire Ins. Co. v. Creations Own Corp.*,
2012 WL 12895642 (M.D. Fla. Nov. 5, 2012) ...................................20

*O'Brien v. Progressive N. Ins. Co.*,
785 A.2d 281 (Del. 2001) ..................................................................53

*Oak Park Calabasas Condo. Ass'n v. State Farm Fire & Cas. Co.*,
137 Cal. App. 4th 557 (Cal. Ct. App. 2006) ......................................33

*Pac. Emps. Ins. Co. v. Cesnik*,
219 F.3d 1328 (11th Cir. 2000) .........................................................38

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Pavarini Constr. Co. (Se) Inc. v. Ace Am. Ins. Co.*,
   161 F. Supp. 3d 1227 (S.D. Fla. 2015) ................................................19

*Pearson v. Caterpillar Fin. Servs. Corp.*,
   60 So. 3d 1168 (Fla. Dist. Ct. App. 2011) ..........................................54

*Preau v. St. Paul Fire & Marine Ins. Co.*,
   645 F.3d 293 (5th Cir. 2011)................................................................22

*Rosa v. Safepoint Ins. Co.*,
   350 So. 3d 468 (Fla. Dist. Ct. App. 2022) ..........................................14

*Scottsdale Ins. Co. v. Nat'l Shooting Sports Found.*,
   2000 WL 1029091 (5th Cir. 2000) ......................................................45

*Sebo v. Am. Home Assurance Co.*,
   208 So. 3d 694 (Fla. 2016)..................................................................33

*Siegle v. Progressive Consumers Ins. Co.*,
   819 So. 2d 732 (Fla. 2002)..................................................................52

*SIG Arms Inc. v. Emps. Ins. of Wausau*,
   122 F. Supp. 2d 255 (D.N.H. 2000)............................................. 45, 46

*Skroh v. Travelers Ins. Co.*,
   227 So. 2d 328 (Fla. Dist. Ct. App. 1969) ..........................................20

*Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*,
   872 F.3d 1161 (11th Cir. 2017) ...........................................................28

*Spandex House, Inc. v. Hartford Fire Ins. Co.*,
   816 F. App'x 611 (2d Cir. 2020) ........................................................32

*State Farm Fire & Cas. Co. v. Compupay, Inc.*,
   654 So. 2d 944 (Fla. Dist. Ct. App. 1995) ..........................................14

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
   913 So. 2d 528 (Fla. 2005)..................................................................18

*Thomas v. Prudential Prop. & Cas.*,
   673 So. 2d 141 (Fla. Dist. Ct. App. 1996) ..........................................14

*TIG v. Andrews Sporting Goods, Inc*,
   2002 WL 1293043 (Cal. Ct. App. June 12, 2002).............................46

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Travelers Prop. Cas. Co. of Am. v. Anda, Inc*.,
  90 F. Supp. 3d 1308 (S.D. Fla. 2015), *aff'd on other grounds*, 658 F.
  App'x 955 (11th Cir. 2016)........................................................................ passim

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
  71 F.4th 894 (11th Cir. 2023) ..............................................................11

*Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC*,
  731 F. App'x 920 (11th Cir. 2018) ......................................................48

*Tropical Park, Inc. v. U.S. Fid. & Guar. Co*.,
  357 So. 2d 253 (Fla. Dist. Ct. App. 1978) ...........................................14

*Walmart Inc. v. ACE Am. Ins. Co*.,
  2023 WL 9067386 (Ark. Cir. Ct. Dec. 29, 2023)..................................44

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...............................................................................39

*Westfield Nat'l Ins. Co. v. Quest Pharms., Inc*.,
  57 F.4th 558 (6th Cir. 2023) ....................................................... passim

*Woodcraft Mfg., Inc. v. Charter Oak Fire Ins. Co*.,
  2009 WL 1329138 (N.D. Fla. May 12, 2009) .................................. 19, 20

**Other Authorities**

57B Am. Jur. 2d *Negligence* § 954 (2023 ed.) ...........................................42

*The American Heritage Dictionary of the English Language* 1803 (5th ed.
  2011)......................................................................................................25

**Rules**

Fed. R. Civ. P. 56(a)....................................................................................11

**INTRODUCTION**

The liability insurance policies issued by the Insurers cover lawsuits against Publix Super Markets, Inc. ("Publix") seeking damages "because of" or "for" bodily injury.  The district court correctly held that those policies do not apply to suits by governments and hospitals seeking to recover increased budgetary expenses they incurred in responding to the opioid epidemic (the "Opioid Lawsuits").  Multiple appellate decisions have reached the same conclusion, for the same reason:  liability policies cover suits asserting liability for specific injuries to particular persons and seeking compensation for those injuries.  That requirement is satisfied when, for example, a plaintiff sues to recover damages for her own bodily injury or asserts a derivative-type claim seeking compensation for costs she incurred on behalf of a specific person with a particular injury caused by the insured.  The Opioid Lawsuits are very different:  they seek to hold Publix liable for the *budgetary effects* of the opioid epidemic, not for causing any particular injuries to any particular persons.  Such purely economic losses are not even potentially covered by liability insurance, even if they arguably bear some but-for connection to generalized bodily injuries to third parties not before the court in any direct or derivative-type capacity.

The few opinions that conclude otherwise rest on a premise squarely rejected by Florida law, *viz.*, that a mere but-for causal connection between a plaintiff's

economic losses and bodily injuries to third parties *does* suffice to establish that plaintiff's economic losses are "because of" bodily injury.  Those opinions are wrong on their own terms, but Florida law eliminates any doubt—it explicitly rejects the "but for" principle, instead requiring a "direct" causal connection between an alleged bodily injury and the plaintiff's claimed losses.  No such connection exists in the Opioid Lawsuits.  The Lawsuits do refer to bodily injuries, but solely to illustrate why Publix's alleged conduct was harmful to the affected communities and led to the claimed budgetary impacts.  Those impacts plainly do not bear the direct causal connection to specific bodily injury required for coverage under Florida law.

On appeal, Publix purports to eschew reliance on a "but for" causal connection, but cites only authorities relying on that discredited premise.  Publix also relies entirely on the same background references to third-party bodily injuries erroneously cited in opinions applying a "but for" test.  At bottom, Publix cannot overcome the dispositive point that the Opioid Lawsuits' claims do not depend on proving that Publix is liable for causing bodily injuries to particular persons, as required for a direct causal connection under Florida law.  And because Florida law is clear on this point, there is no need to certify any issue to the Florida Supreme Court.  The judgment should be affirmed.

## STATEMENT OF JURISDICTION

The Insurers do not contest Publix's jurisdictional statement identifying the bases for diversity jurisdiction and appellate jurisdiction.  Opening Brief ("OB") vii.

## STATEMENT OF THE ISSUE

Whether the Opioid Lawsuits seeking to hold Publix liable for the budgetary effects of the opioid epidemic are suits "because of" or "for" "bodily injury."

## STATEMENT OF THE CASE

### A.    Factual Background

1.    _The Opioid Lawsuits_

Publix was named as a defendant in approximately seventy Opioid Lawsuits, all but two of which were brought by state or local governments.  D.E.197 at 3; D.E.11-5 at 2-6.[2]  The Lawsuits allege that Publix contributed to the opioid crisis by failing to report and prevent the shipping and filling of suspicious orders of opioids in the course of its pharmacy distribution and dispensing operations.  _See_, _e.g._, D.E.177-11 at 136-145.  Publix focuses on _Cobb County v. Purdue Pharma L.P., et al._, No. 1:18-op-45817 (the "Cobb County Action") as an exemplar, but it concedes that "all the Opioid Lawsuits" at issue in this case—including two lawsuits brought by hospital plaintiffs—"are materially similar."  OB13.  All the

---

[2] "D.E." refers to district court docket entries.  Page numbers in D.E. citations are those assigned by the ECF system.

lawsuits allege the same theory of recovery:  that the defendants contributed to "a public health crisis of epidemic proportions" with the result that, "[a]s a practical and financial matter, the [plaintiffs have] been saddled with an enormous economic burden."  D.E.177-11 at 224.  Whether labeled public nuisance, negligence, or something similar, the Opioid Lawsuits invariably allege aggregate societal harm and seek to recover economic losses sustained when governments addressed that societal harm.  The Cobb County complaint, for example:

- asserts that "Defendants' conduct in promoting opioid use and fueling diversion has had severe and far-reaching public health, social services, and criminal justice consequences," D.E.177-9 at 15;

- explains that the "costs" for those negative society-wide effects are "borne by Plaintiff and other governmental entities," such that "Governmental entities, and the services they provide their citizens, have been strained to the breaking point," *id.* at 15-16;

- seeks recovery of "[i]ncreased costs and expenses for Plaintiff relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems," D.E.177-11 at 230; and

- seeks reimbursement of expenditures and "a judgment that the [defendants] fund the abatement of the ongoing public nuisance each of them created" via societal-level efforts that would otherwise be

4

funded by governments, *id.* at 232.

The Cobb County complaint, like the other Opioid Lawsuit complaints, references general bodily injuries to illustrate how budgetary impacts occurred or to provide context explaining why the opioid crisis constitutes a public nuisance or harm to society. *See*, *e.g.*, D.E.177-9 at 201-202. Neither the Cobb County Action nor any other Opioid Lawsuit seeks to establish liability, and obtain compensation, for any particular person's bodily injury, as class actions or derivative claims would.[3] Redress for aggregate budgetary injuries is the *only* recovery sought by the Opioid Lawsuits.

2.    *The Policies*

Publix purchased liability coverage for the period between January 1, 2013 to January 1, 2014 that included the following policies (the "2013 Policies")[4]:

- *Layer 1:* Publix maintained a self-insured retention of $1.9 million.

- *Layer 2*: Hartford issued the "Druggists Policy," which is a "fronting policy," meaning that it involved no risk transfer because the policy's

---

[3] Twenty-eight of the underlying complaints contain express disclaimers to that effect. *See*, *e.g.*, D.E.179-25 at 154 ("The Plaintiff here seeks recovery for its own harm"); *id.* at 220 ("Plaintiff does not seek damages for the wrongful death, physical personal injury, serious emotional distress, or any physical damage to property caused by Defendants' actions."); D.E.270 at 5.

[4] Publix relies on certain of the 2013 Policies as exemplars (OB5), but the rest of the years subject to the judgment below, spanning 1995-2020, involve similarly-structured insurance with the same "because of" or "for" bodily injury requirement. D.E.278.

limit matches Publix's deductible obligation.[5]

- *Layer 3*:  Liberty Mutual issued an umbrella policy that, in relevant part, follows form to the Druggists Policy.

- *Layer 4*:  ACE issued an umbrella policy with its own terms and conditions (the "ACE Policy").

- *Layers 5-9*:  The remaining Insurers (Great American, LIUI, XL, Ohio Casualty, and National Surety) issued excess policies that in relevant part follow form to the ACE Policy.

D.E.197 at 4-6.

The Druggists Policy and ACE Policy (together, "the Policies") thus set forth the policy language relevant to this appeal.  The Policies share the same critical coverage prerequisite:  they provide indemnification for Publix's liability to pay sums "as damages" "*because of* 'bodily injury.'"  D.E.177-1 at 6 (Druggists Policy); D.E.177-3 at 57 (ACE Policy) (emphasis added).  The duty to defend similarly attaches to "any 'suit' seeking damages *because of* 'bodily injury' to which this insurance applies" (in the Druggists Policy) or to "any 'suit' seeking damages *for* 'bodily injury' … to which this insurance applies" (in the ACE Policy).  D.E.177-1 at 6, D.E.177-3 at 8 (emphasis added).  The Policies define

---

[5] Contrary to Publix's assertion (OB11), Hartford is accordingly not subject to a duty to defend.  *See* D.E.177-1 at 23 (Hartford's obligation to pay "damages and 'claim expenses'" applies only "in excess of any deductible amounts").

"bodily injury" as "bodily injury, sickness or disease sustained by *a person*, including mental anguish or death resulting from any of these at any time." D.E.177-1 at 16 (emphasis added); *see* D.E.177-3 at 20 (similar).  The Policies further require that "*[t]he* 'bodily injury' or 'property damage' is caused by an 'occurrence'" that "occurs during the 'policy period'" and "takes place in the 'coverage territory.'"  D.E.177-1 at 7; D.E.177-3 at 6.  The Druggists Policy states that "all related acts or omissions in the furnishing of 'your druggists product' to *any one person*" arise out of a single occurrence, D.E.177-1 at 18 (emphasis added), while the ACE Policy similarly provides that where the bodily injury "aris[es] out of a 'pharmacist liability incident,'" all related "acts, errors or omissions in the furnishing of 'pharmacist professional services' *to any one person*" are "considered a single 'pharmacist liability incident.'"  D.E.177-3 at 57 (emphasis added).

The Policies contain additional provisions that reinforce the requirement of particularized bodily injury to an individual.  The Policies clarify their application to derivative-type claims—i.e., claims asserted *on behalf of* an injured person by a parent or guardian, or *through* the injured person whose rights were transferred to the plaintiff—by providing that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services, or death resulting at any time from *the* 'bodily injury.'"  D.E.177-1 at 7; D.E.177-3 at 7

7

(emphasis added).  The ACE Policy further requires that, prior to the policy period, no insured "knew that *the* 'bodily injury' … had occurred, in whole or part" and treats "any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the 'policy period'" as known by the insured prior to the policy period.  D.E.177-3 at 6.  Finally, the ACE Policy also contains a provision requiring that, "[t]o the extent possible," an insured must provide notice of an occurrence that includes "[t]he names and addresses of any injured persons and witnesses" as well as "[t]he nature and location of any injury or damage."  *Id.* at 18.

### B.    Procedural History

Publix initiated this action and filed the operative First Amended Complaint in November 2022, asserting claims for breach of contract, anticipatory breach of contract, and a declaratory judgment that it is entitled to defense costs and indemnification in connection with the Opioid Lawsuits.  D.E.11.

In April 2023, Publix moved for partial summary judgment as to a subset of Insurers, seeking a declaration that they had a duty under certain of the 2013 Policies to cover Publix's Opioid Lawsuit defense costs.  The district court issued an opinion on October 29, 2024, denying the motion and ordering Publix to show cause why summary judgment should not be granted in those Insurers' favor.  D.E.270.

8

After determining that it had jurisdiction, *id.* at 8-16, the court addressed the merits. The court first held that, contrary to Publix's submission, the phrase "because of bodily injury" is "not ambiguous—only its application to the underlying lawsuits is in dispute." *Id.* at 22. Canvassing Florida decisions interpreting that language, the court observed that "Florida law defines 'because of' as a direct causal connection, rather than but-for causation." *Id.* at 16.

To apply that principle here, the court analyzed *Travelers Property Casualty Co. of America v. Anda, Inc.*, 90 F. Supp. 3d 1308 (S.D. Fla. 2015), *aff'd on other grounds*, 658 F. App'x 955 (11th Cir. 2016), which applied Florida law to interpret "because of bodily injury" in the opioid coverage context. D.E.270 at 24-26. The *Anda* district court rejected coverage because the opioid lawsuits sought damages only for the government plaintiff's own economic losses, rather than asserting claims by or on behalf of individual citizens to recover for physical harm sustained by those citizens. 90 F. Supp. 3d at 1314-15. The court below found *Anda*'s analysis persuasive, D.E.270 at 24-26, and bolstered that conclusion with a detailed survey of precedents in other jurisdictions that reached the same conclusion, *id.* at 26-28.

Agreeing with those decisions "after careful consideration," the court held "that the causal connection between the specific injuries alleged and the damages the underlying plaintiffs seek in the opioid lawsuits is too attenuated to constitute

9

damages 'because of bodily injury' under Florida law." *Id.* at 28-29.  While "the underlying lawsuits refer to people injured by opioids," the plaintiffs did "not seek reimbursement for the costs of those particular individuals' medical treatment." *Id.* at 28.  At bottom, the court explained, Publix could articulate only a "but-for connection" between bodily injury and the damages sought in the Opioid Lawsuits, rather than the "direct causal connection" required by Florida law.  *Id.* at 29.

The court also found decisions cited by Publix to be unpersuasive.  Among other defects, the decisions failed to "acknowledge the significant differences in the opioid lawsuits' theories of relief from that of an individual, organization, or even government entity seeking to recover the cost of a specific injured person's care." *Id.* at 30 & n.14.  The "rest of the policy language" reinforced that conclusion, the court emphasized, by repeatedly "refer[rring] to specific bodily injuries rather than aggregate ones." *Id.* at 31.

Finally, the court held that the addition of an "opioid and narcotics liability" exclusion to later policies was irrelevant to coverage for the Opioid Lawsuits under these policies.  *Id.* at 32.

In response to the court's opinion and show-cause order, Publix filed an unopposed motion seeking entry of final judgment in all Insurers' favor to facilitate an appeal.  The district court entered a declaratory judgment that Publix is not entitled to coverage for the Opioid Lawsuits on March 14, 2025, and a final

judgment in Insurers' favor as to all claims on March 18, 2025.  D.E.285, 288.[6]

Publix timely appealed.  D.E.288.[7]

## STANDARD OF REVIEW

This Court reviews the district court's "grant of summary judgment *de novo*." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 904 (11th Cir. 2023).  "Summary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

## SUMMARY OF THE ARGUMENT

I.  The Opioid Lawsuits do not qualify for coverage because they do not seek damages "because of" bodily injury.

A.  The plain language of the coverage grant applies only to suits asserting liability and seeking compensation for specific bodily injuries to particular persons.

1.  This straightforward reading of the policy language has been embraced in numerous appellate decisions.  It is also compelled by Florida law, which rejects the view that the phrase "because of" requires only a "but for" connection between bodily injury and the claimed damages.  Precedent from Florida and elsewhere in

---

[6] Because the final judgment disposed of all claims as to all Insurers, Publix errs in asserting that National Surety is "not a party to this appeal."  OB8 n.3.

[7] Publix's appeal does not address the "other disputed coverage questions" left open by the district court (D.E.270 at 16), as Publix acknowledges (OB5 n.2, 47).  Those open issues preclude any entry of partial summary judgment for Publix, *contra* OB4, 55.

other contexts confirms that suits seeking compensation for aggregate economic loss lack the requisite direct connection to bodily injuries.

2.  The Policies contain numerous additional provisions reinforcing that requirement, including the repeated use of definite articles to reference "the bodily injury"; the provisions clarifying coverage for certain derivative claims; the prior-knowledge and notice provisions requiring identification of particular bodily injuries for which liability is alleged; and the provision defining "bodily injury."

B.  The Opioid Lawsuits assert liability only for generalized economic losses incurred in responding to the opioid crisis, not for damages caused by specific bodily injuries to specific persons.  They accordingly involve risks entirely different from bodily injury claims.  It is irrelevant that some of the institutional plaintiffs' budgetary outlays go toward services like medical treatment because the damages sought do not depend on liability for causing any particular bodily injury.

C.  A contrary rule would defy the basic logic of insurance, which requires that risks be predictable so that they can be underwritten with reasonable certainty. The open-ended liability that would result if the Policies' "because of" language is not given effect would open the floodgates to essentially unlimited coverage.

II.  Publix's counterarguments lack merit.

A.  In an effort to manufacture a direct causal connection between the damages sought in the Opioid Lawsuits and bodily injury, Publix attempts to

12

recharacterize the Lawsuits as class-action-style suits seeking to hold Publix liable for causing injuries to specific individuals.  That recharacterization is baseless— the Opioid Lawsuits are not class actions in any respect.  Among other obvious differences, they do not seek compensation for injured individuals, all of whom retain—and in some instances have asserted (in other cases)—their own individual claims for bodily injury.  Publix cites references to bodily injury in the underlying complaints, but those references merely illustrate some of the societal harms of the opioid crisis and the budgetary losses they have caused.

B.  Publix relies on unpersuasive and inapposite cases that have been repeatedly rejected by the vast majority of appellate courts to have considered this issue.  Publix's efforts to discredit or distinguish those better-reasoned decisions are unavailing.

C.  Publix misreads several key policy provisions, including the provision that describes coverage for derivative-type claims, the notice provision that requires insureds to identify particular bodily injuries, and the Policies' exclusions for certain governmental claims.  Publix also misstates the role and relevance of opioid exclusions added to later policies.

D.  Finally, Publix errs in arguing that the mere fact of disagreement between the parties or between courts suffices to trigger coverage.

13

## ARGUMENT

The district court correctly granted judgment in the Insurers' favor, properly applying the policy language and recent appellate precedents addressing the same language in identical circumstances.  As the district court recognized, the same result is compelled under Florida law, which governs this dispute.  D.E.270 at 20 n.9.

"The guiding principle for insurance policy interpretation" under Florida law "is that the policy must be read as a whole, affording words their plain meaning as bargained for by the parties."  *Rosa v. Safepoint Ins. Co*., 350 So. 3d 468, 470 (Fla. Dist. Ct. App. 2022).  While "an ambiguity may exist in an insurance policy when the terms of the contract are subject to different interpretations … courts should not put strain and unnatural construction on the terms of the policy in order to create uncertainty or ambiguity."  *Thomas v. Prudential Prop. & Cas*., 673 So. 2d 141, 142 (Fla. Dist. Ct. App. 1996).

The duty to defend "depends solely on the allegations in the complaint filed against the insured."  *Tropical Park, Inc. v. U.S. Fid. & Guar. Co*., 357 So. 2d 253, 256 (Fla. Dist. Ct. App. 1978).  There is "no duty to defend"—and likewise no duty to indemnify—"a suit where the complaint upon its face alleges a state of facts which fails to bring the case within the coverage of the policy."  *State Farm Fire & Cas. Co. v. Compupay, Inc*., 654 So. 2d 944, 946 (Fla. Dist. Ct. App. 1995)

14

(quotation omitted).[8]

Because the facts alleged in the Opioid Lawsuits do not bring them within the terms of the Policies, there is no duty to defend or indemnify.  The judgment in Insurers' favor should be affirmed.

## I.    THE OPIOID LAWSUITS DO NOT SEEK DAMAGES "BECAUSE OF" OR "FOR" BODILY INJURY

The Policies cover legal liability imposed "as damages" "because of … 'bodily injury,'" defined as "bodily injury, sickness or disease sustained by a person." D.E.177-1 at 6, 16; D.E.177-3 at 20, 57.  The same language limits the duty to defend to "any 'suit' seeking damages because of 'bodily injury,'" D.E.177-1 at 6, or—in the ACE Policy—"for 'bodily injury,'" D.E.177-3 at 8.[9]  A suit seeking damages because of a person's bodily injury includes a suit filed by a third party seeking to recover payments made by the third party for "care, loss of services or death resulting at any time from the 'bodily injury'" to the injured person.  D.E.177-1 at 7; D.E.177-3 at 7.

Multiple appellate courts—including the Sixth Circuit and the Ohio and Delaware Supreme Courts—have recently held that liability policies with the same

---

[8] As *Compupay* illustrates, and contrary to Publix's unsupported assertion, Florida's duty to defend is not "especially broad" (OB4) compared to other jurisdictions.

[9] The ACE Policy and follow-form policies thus "use both 'because of bodily injury' and 'for bodily injury' interchangeably."  *Westfield Nat'l Ins. Co. v. Quest Pharms., Inc*., 57 F.4th 558, 565 (6th Cir. 2023).

language do not provide coverage for government opioid suits. *In re CVS Opioid Ins. Litig.*, -- A.3d --, 2025 WL 2383644, at *1 (Del. Aug. 18, 2025); *Quest*, 57 F.4th at 562; *Acuity v. Masters Pharm., Inc.*, 205 N.E.3d 460, 473-74 (Ohio 2022); *ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 246-54 (Del. 2022). Those decisions join a growing consensus, including among courts within this Circuit. *See, e.g.*, *Anda*, 90 F. Supp. 3d at 1314; *Allied Prop. Cas. Ins. Co. v. Bloodworth Wholesale Drugs, Inc.*, 727 F. Supp. 3d 1404, 1414 (M.D. Ga. 2024).

As those decisions explain, and as Florida courts have long held, liability coverage for damages "because of" bodily injury does not apply to claims seeking to establish liability and obtain compensation only for aggregate economic losses, rather than for individual bodily injuries, even if those losses bear some but-for connection to third-party bodily injuries. Rather, the necessary connection to bodily injury exists only where the underlying plaintiff claims that the insured is liable for causing bodily injury to herself or to a third party on whose behalf she can recover. Applying that rule, these recent decisions have rejected coverage for government opioid lawsuits because the plaintiffs seek to recover damages only "for their own aggregate economic injuries caused by the opioid epidemic and not for any particular opioid-related bodily injury sustained by a citizen." *Acuity*, 205 N.E.3d at 468. This case is identical in all relevant respects.

16

### A.    The Policies Cover Only Suits Seeking Damages For Specific Bodily Injuries To Particular People

Multiple features of the Policies confirm that they insure only Publix's liability for causing specific injuries to specific people, not generalized losses to the broader public.

### 1.    *The Policies' Coverage Grant Does Not Apply To Suits Seeking Compensation For Purely Economic Losses Not Derivative Of Specific Bodily Injuries*

To constitute a suit "because of" bodily injury, "[t]he complaint must do more than relate to a personal injury—it must seek to recover *for the personal injury* or seek damages *derivative of the personal injury*."  *Rite Aid*, 270 A.3d at 249 (emphasis added).  That is, "the phrase 'damages because of bodily injury'… requires more than a tenuous connection between the alleged bodily injury sustained by a person and the damages sought"; instead, "the damages sought in the underlying suit need to be tied to a particular bodily injury sustained by a person." *Acuity*, 205 N.E.3d at 470, 472; *accord Quest*, 57 F.4th at 563-64 (underlying plaintiffs must "plead and prove that the relevant bodily injury or property damage occurred," such that damages for which insured seeks coverage are directly "tied to an individual's (or individuals') bodily injury or injuries").

This straightforward reading of the policy text is well-established in Florida. As Publix concedes (OB29), the Florida Supreme Court has held that "because of" has "a more circumscribed meaning … than merely being a sequential link in the

17

chain of events." *Garcia v. Fed. Ins. Co*., 969 So. 2d 288, 293 (Fla. 2007). Its precedent contrasts the phrases "because of" and "caused by" with the "broader" phrase "arising out of," which "contemplates a more attenuated link." *Id.* The latter means "'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co*., 913 So. 2d 528, 532-33 (Fla. 2005) (quotation omitted); *see Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420 F.3d 1317, 1327 (11th Cir. 2005) (collecting cases establishing that "arising out of" is equivalent to but-for causation). Unlike those "but for" concepts, the terms "because of" and "caused by" require "a *direct* causal connection." *Atkinson v. Dollar Rent-A-Car, Inc*., 525 So. 2d 976, 977 (Fla. Dist. Ct. App. 1988) (emphasis added).

Applying that principle, Florida decisions consistently reject coverage for suits asserting economic injuries that bear some causal connection to bodily injury, but do not seek to establish either direct or derivative liability for any particular bodily injuries. In *Anda*, the court applied Florida law to reject coverage for opioid lawsuits because the government plaintiff "assert[ed] claims only for its own economic loss" rather than "claims on behalf of individual citizens for the physical harm sustained personally by those citizens." 90 F. Supp. 3d at 1314. The opioid lawsuits sought "relief from the massive costs suffered by the State due to [the

defendant's] distribution of drugs allegedly in excess of legitimate medical need," and "[a]ny reference" in the underlying complaint to "physical harm to West Virginia citizens merely provide[d] context explaining the economic loss to the State." *Id.* at 1314-15. The lawsuits thus lacked the direct connection to bodily injury required for coverage. *Id.*

Florida decisions outside the opioid context apply the same analysis, uniformly holding that, to qualify as "because of" bodily injury or property damage, sums imposed "as damages" must measure the cost of redressing the specific, identifiable bodily injury or property damage at issue. *See generally Pavarini Constr. Co. (Se) Inc. v. Ace Am. Ins. Co.*, 161 F. Supp. 3d 1227, 1237 (S.D. Fla. 2015) ("under Florida law, general liability policies … do not cover damages that are purely economic in nature"). In *Key Custom Homes, Inc. v. Mid-Continent Casualty Co.*, 450 F. Supp. 2d 1311 (M.D. Fla. 2006), a construction project burned down, and the insured sought coverage for subsequent suits from subcontractors and others for non-payment, *id.* at 1313-14. Notwithstanding that "the various claims against [the insured] may be traced" to particular "property damage … caused by fire," they were "separate and independent claims," rendering the connection to property damage too tenuous for coverage to attach. *Id*. at 1318. Similarly, in *Woodcraft Manufacturing, Inc. v. Charter Oak Fire Insurance Co*., 2009 WL 1329138 (N.D. Fla. May 12, 2009), the court rejected

coverage for a lawsuit challenging an employer's failure to maintain worker's compensation coverage, because even though an employee's "physical injury formed the background" for the suit, the suit was not "because of 'bodily injury'" because it "did not seek damages" for the injury itself. *Id.* at *3.

Courts have applied the same rule of Florida law to reject coverage for "bystander" suits asserting emotional distress resulting from bodily injuries to third parties. For example, in *Great American Assurance Co. v. Elliott*, 846 F. Supp. 2d 1258 (M.D. Fla. 2012), two brothers sued to recover for emotional distress they suffered when a third brother murdered their mother, *id.* at 1260-61. Despite the causal connection to their mother's death, the court rejected coverage, including because the plaintiff brothers "did not directly incur physical injury from the incident." *Id.* at 1265 n.14; *see also Nationwide Mut. Fire Ins. Co. v. Creations Own Corp.*, 2012 WL 12895642, at *4 (M.D. Fla. Nov. 5, 2012) (father's claim of intentional infliction of emotional distress, though causally connected to his child's bodily injury, did not trigger coverage because he did not seek recovery for "any corresponding physical manifestation of his [own] emotional distress"); *Skroh v. Travelers Ins. Co.*, 227 So. 2d 328, 330 (Fla. Dist. Ct. App. 1969) (lawsuit by father seeking to recover for "pain and suffering" resulting from son's death in automobile accident was not "for bodily injury" because harm to father did not itself qualify as bodily injury).

20

Courts outside of Florida apply the same rule to bystander suits, allowing coverage only when the plaintiff's *own* emotional harm *itself* qualifies as a bodily injury—even though the damages in such suits are, by definition, causally connected in a "but for" sense to the third-party's bodily injury. *Compare*, *e.g.*, *Legion Indem. Co. v. CareStat Ambulance, Inc.*, 152 F. Supp. 2d 707, 719 (E.D. Pa. 2001) (no coverage because, per Pennsylvania law, emotional distress does not constitute "bodily injury"), *with Gov't Emps. Ins. Co. v. Encelewski*, 1995 WL 25427, at *3-4 (D. Alaska Jan. 13, 1995) (finding coverage not based on causal connection to family member's bodily injury but instead because, per Alaska law, the plaintiff's own emotional injury independently qualified as bodily injury); *Emps. Cas. Ins. Co. v. Foust*, 29 Cal. App. 3d 382, 386-87 (1972) (same under California law). In all of these decisions, the causal connection between the plaintiff's emotional damages and the family member's bodily injury did not itself trigger coverage because the plaintiff's emotional damages were not a measure of the third-party's bodily injury. The bystander coverage cases in Florida and elsewhere exemplify the distinction between "damages directly related to bodily injury and those that are more loosely connected" and hence uncovered. *Rite Aid*, 270 A.3d at 248.

Courts across the country have applied the same reasoning to reject coverage for various types of suits seeking to recover downstream economic losses not

21

measured by specific injuries.  In *Preau v. St. Paul Fire & Marine Insurance Co.*, 645 F.3d 293 (5th Cir. 2011), for example, an insured hospital misrepresented the job performance of a former anesthesiologist, who then caused bodily injury to a patient in his new job.  The new employer paid the victim's damages and sued the insured, seeking recovery of its economic loss.  Even though the loss was causally connected to the victim's bodily injury, the Fifth Circuit rejected coverage because the new employer itself "suffered no bodily injury," and thus the suit did not seek "damages for bodily injury."  *Id.* at 296-97; *see also Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 333-34 (5th Cir. 2023) (citing "highly persuasive" *Acuity* and *Rite Aid* decisions to reject coverage for suit seeking to recover economic losses caused by listeria outbreak from contaminated food, even though losses could be "ultimately … traced back to" bodily injuries suffered by customers who contracted listeria).

Similarly, in *Medmarc Casualty Insurance Co. v. Avent America, Inc.*, 612 F.3d 607 (7th Cir. 2010), the insured's products harmed certain infants, and buyers unrelated to those infants sued, alleging economic losses because those known harms reduced the value of the products they purchased.  Despite the causal connection between the asserted economic losses and bodily injuries *to others*, the Seventh Circuit rejected coverage because the complaint "lack[ed] the essential element of actual physical harm *to the plaintiffs*." *Id.* at 614-15 (emphasis added).

As *Rite Aid* recognizes, *Medmarc* exemplifies the rule that for coverage to attach, a "complaint must do more than relate to a personal injury—it must seek to recover for the personal injury or seek damages derivative of the personal injury." 270 A.3d at 249; *see also Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center, Inc*., 566 F.3d 689 (7th Cir. 2009) (no coverage for suit by healthcare payer to recover economic losses with only but-for link to bodily injury).

The decision in *Diamond State Insurance Co. v. Chester-Jensen Co*., 611 N.E.2d 1083 (Ill. App. Ct. 1993), is to the same effect. There, an insured HVAC company was sued by a state employer for economic losses incurred when the HVAC system failed, causing illnesses among its employees that diminished their productivity. *Id.* at 1087-88. Despite the causal connection between the employees' bodily injuries and their employer's alleged economic losses, the court rejected coverage. The "core of the State's claim for damages," it explained, "is a claim for its economic losses," and the fact that such losses "may have been occasioned in part by the illness of its employees … does not transmute its economic claim for which it seeks recovery … into one for 'bodily injury.'" *Id.* at 1088. Drawing the same distinction recognized in both opioid coverage cases and Florida law, *Chester-Jensen* observed that coverage might have applied if the state had sued "on behalf of its employees, seeking recovery for damages sustained by

23

them on account of their illness or other bodily injury." *Id*. at 1087. It was not enough for coverage, however, simply to observe that the state's economic losses were "alleged in part to be attributable to illness or injury" of its employees. *Id*.

These precedents all confirm the same point: liability policies "cover an insured's liability for an occurrence causing 'bodily injury' to a specific, identifiable person," *Acuity*, 205 N.E.3d at 464, and where the plaintiff's claim does not seek to prove liability for harms to a third person and to recover for those harms, there is no coverage. Publix's position is incompatible with every one of these decisions.

2. *Additional Policy Provisions Confirm That Covered Suits Must Seek To Establish Liability For Particular Bodily Injuries To Individuals*

The Policies are replete with additional provisions confirming that coverage applies only to suits seeking recovery based on liability for particular bodily injuries suffered by particular people.

*First*, the Policies repeatedly use concrete descriptors and definite articles to identify the injuries that implicate coverage, thereby "indicat[ing] that the policies extend coverage only to claims seeking compensation related to specific, identifiable injuries." *Quest*, 57 F.4th at 565. The insuring agreement, for example, covers only "bodily injury sustained by *a person*," which "emphasiz[es] that the lawsuits must be tied to an individual's (or individuals') bodily injury or injuries." *Id.* at 564 (emphasis added); D.E.177-1 at 16; D.E.177-3 at 20; *see also*

24

D.E.177-1 at 18 (defining "occurrence" to narrowly target the furnishing of "drugs to *any one person*" (same)); D.E.177-3 at 57 (same, as to definition of "pharmacist liability incident").  Similarly, the Policies make "repeated use of the phrase '*the* bodily injury," *Acuity*, 205 N.E.3d at 470; *see supra* at 7-8, thus continually invoking the "definite article … 'used before singular or plural nouns that denote particular, specified persons or things,'" *Int. of M.R.*, 327 So. 3d 848, 851 (Fla. Dist. Ct. App. 2021) (quoting *The American Heritage Dictionary of the English Language* 1803 (5th ed. 2011)); *see Evanto v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1298 (11th Cir. 2016) (use of "definite article ('the')" connotes a "particular" object).  That language, the *Acuity* court explained, "suggests that the damages sought in the underlying suit need to be tied to a particular bodily injury sustained by a person or persons in order to invoke coverage under the policies." 205 N.E.3d at 470.  Otherwise, "it would be rather difficult to determine whether *the* bodily injury occurred during the policy period, was caused by an occurrence in the coverage territory, or had occurred in whole or in part prior to the policy period," as the Policies require.  *Id.* at 470-71.

*Second*, the Policies explicitly confirm that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"  D.E.177-1 at 7; D.E.177-3 at 7.  In addition to reaffirming that a particularized injury is required by

25

using "*the* bodily injury," the provision confirms that coverage can apply to claims brought by third parties (i.e., "person[s] or organization[s]") only to the extent that those third parties provided care ("care"), assert lost consortium ("loss of services") or are the representative of the individual's estate ("death")  in connection with that particularized bodily injury.  This provision thus encompasses "derivative claims," such as "subrogation claims," which are "often brought by 'organizations' such as insurance companies, that are directly related to and dependent on the existence of a particular bodily injury or injuries."  *Quest*, 57 F.4th at 566.  To establish that sort of claim, the plaintiff "must show that it treated an individual with an injury, how much that treatment cost, and that the injury was caused by the insured."  *Rite Aid*, 270 A.3d at 252.  The provision also clarifies the policy's coverage timing, ensuring that coverage for the specified derivative economic damages applies even though they were incurred *after* the policy period, i.e., "at any time" (notably, the bodily injury itself still must occur during the policy period).  But most importantly for present purposes, the provision serves to reaffirm that such economic damages are covered only where they are "tied to a particular bodily injury and depends on proof of [that] bodily injury to" the particular injured person.  *Acuity*, 205 N.E.3d at 473; *see Rite Aid*, 270 A.3d at 249 (coverage applies where suit seeks "damages derivative of the personal injury").

*Third*, the "continuing injury" clause within the ACE Policy's prior-

knowledge provision further confirms the Policies' focus on suits seeking compensation based on liability for specific injuries to specific people. That clause provides that when the insured knew about "the bodily injury" underlying the lawsuit before the policy period, then "any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the 'policy period'" is treated as known by the insured prior to the policy period. D.E.177-3 at 6. That language requires an examination of "whether the specific type of bodily injury alleged in the underlying suit" is the "same type of bodily injury allegedly known by the insured prior to the policy period." *Acuity*, 205 N.E.3d at 471; *see Kaady v. Mid-Continent Cas. Co.*, 790 F.3d 995, 998 (9th Cir. 2015) ("the claimed damage must be the same as the known damage"). "In order to make the comparison" required by this clause, then, "[t]he bodily injury alleged in the underlying suit … must be a particularized injury." *Acuity*, 205 N.E.3d at 471.

*Fourth*, the ACE Policy requires the insured, "to the extent possible," to provide "[t]he names and addresses of any injured persons and witnesses" as well as "[t]he nature and location of any injury or damage." D.E.177-3 at 18. This provision underscores the Policy's limitation to suits based on specifically identifiable bodily injuries. Publix could not possibly comply with this provision in connection with the Opioid Lawsuits—the underlying plaintiffs do not allege that any specific persons were injured, much less identify them in any way. Publix

27

therefore cannot ever tell Insurers who was injured, who witnessed the injury, or where it occurred—information critical to assessing other coverage requirements, e.g., whether the injuries resulted from an "occurrence," and whether they occurred during the policy period.

*Fifth*, and finally, the policies specifically define "bodily injury" to include "mental anguish" "resulting from" bodily injury. D.E.177-1 at 16; *see* D.E.177-3 at 20. If—as Publix contends—the Policies did not require that damages actually compensate for a particular bodily injury, as opposed to merely being causally connected to bodily injury, there would have been no need to expand the bodily injury definition in this way. Instead, such damages would have already been covered by virtue of "resulting from" bodily injury. Publix's interpretation thus runs afoul of the principle that "constructions rendering particular phrases mere surplusage" are to be avoided under Florida law. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1166 (11th Cir. 2017).

All of these provisions confirm the same principle already established by the Policies' "because of" language: the Policies provide no coverage for economic losses that are not tied to or measured by the insured's liability for any specific bodily injury that must be proved in the underlying suit.

### B. There Is No Coverage For The Opioid Lawsuits, Which Seek to Recover Only Generalized Economic Losses

The opioid coverage decisions discussed above address the same type of

complaints at issue here,[10] and they reject coverage "because the governments' claims for increased public-service costs are untethered to any one person's bodily injury" and instead assert purely economic losses in the form of "costs of the opioid epidemic generally." *Acuity*, 205 N.E.3d at 467.  No cause of action seeks to recover for any particular injury or requires proof of any particular injury to impose liability.  *See Rite Aid*, 270 A.3d at 246 ("Absent from the complaints … are personal injury damage claims for or on behalf of individuals who suffered or died from the allegedly abusive prescription dispensing practices.").[11]  The plaintiffs instead "seek[] economic losses or costs that they expended in providing treatment, counseling, and various services to abate the opioid epidemic," such as increased law enforcement and childcare services.  *Bloodworth*, 727 F. Supp. 3d at 1414.  Because the suits are "not directed to an individual injury but to a public health crisis," the damages they seek are not "because of" bodily injury.  *Rite Aid*, 270 A.3d at 246, 253.  Put differently, because the "*type* of liability asserted" in the Opioid Lawsuits is not liability for "individualized personal injury," it is "not the type of liability covered under the policies."  *CVS*, 2025 WL 2383644, at *13.

---

[10] Indeed, at least forty-one of the Opioid Lawsuits against Publix also name Rite Aid or Quest as defendants.  *See* D.E.1-7.

[11] As noted above, *see supra* at 5 n.3, many of the underlying complaints contain express disclaimers to this effect.  Because all of the complaints are otherwise materially identical, the disclaimers simply state explicitly what is already implicit in all complaints, *viz.*, none seeks recovery for or on behalf of injured individuals.

As the foregoing decisions recognize, it makes no difference that some of a government's budgetary outlays may ultimately go towards services relating to bodily injury, such as "addiction treatment" or "burying the dead." D.E.177-11 at 14. The damages sought by governments to fund those and other government operations remain economic losses untethered to proof or measurement of any particular bodily injury. The underlying lawsuits seek these damages to allow governments to fulfill their obligations and to abate a nuisance at the societal level—not to redress any person's bodily injury as proven in the course of the litigation. As *Acuity* explains, even though "some of the complaints include allegations that the governments' citizens sustained opioid-related injuries and that the damages sought by the governments include costs for providing medical care and treatment services," the underlying suits do not seek to compensate for any "specific opioid-related injuries sustained by their citizens" or to recover for "medical care provided for *those* specific opioid-related injuries." 205 N.E.3d at 468.

To illustrate this distinction between claims seeking to impose liability for causing specific injuries and claims for broad social harms, *Rite Aid* offers a useful analogy to "a city suing an insured soda distributor for increasing its citizens' obesity rates." 270 A.3d at 253. Although the city in such a suit "might claim costs for expanding its parks and recreational activities to address weight gain or

increased public hospital expenditures for treating the population (e.g., more nurses, administrative costs, a new operating center for gastric bypass surgery)," such "economic claims would not stem from any individual injury," as required for coverage. *Id.* Just so here. The government plaintiffs seek "compensation for their economic losses, not derivatively for the bodily injuries suffered by [their residents] in the opioid crisis." *Rite Aid*, 270 A.3d at 248. Such claims for downstream economic losses that are not derivative or a measure of specific bodily injuries are not subject to liability insurance coverage.[12]

Given the nature of the underlying plaintiffs' theory of recovery, there is no possible development in the underlying suits as pleaded that could trigger coverage. A possibility for coverage could arise only if the suits were

_____

[12] The same is true of the two Opioid Lawsuits filed by hospitals (one of which has been dismissed, *see* Dismissal Order, *In re Nat'l Prescription Opiate Litig.*, No. 18-op-45493 (N.D. Ohio June 14, 2024) (ECF 44)). Publix makes no effort to differentiate between government-plaintiff suits and hospital-plaintiff suits, nor could it: their theories of recovery are identical. Like the government plaintiffs, the hospital plaintiffs assert liability only for general budgetary expenditures—they do not allege that Publix is liable for causing any particular injuries to particular persons. *See*, *e.g.*, D.E.178-12 at 100 (asserting increased "operational costs" from opioid crisis as a whole, such as "costs related to researching non-opioid treatment alternatives and training staff accordingly"). For that reason, courts have found no coverage for government, hospital, and third-party payor suits without distinction. *See*, *e.g.*, *CVS*, 2025 WL 2383644, at *7, *10-12 (applying *Rite Aid* to hospital-plaintiff lawsuits because they seek only recompense for generalized "economic losses" such as undifferentiated "unreimbursed treatment costs and an increase in operating costs"); *Quest*, 57 F.4th at 560 (no coverage for suits by government entities and "private health clinics").

"fundamentally transformed and restructured," such as by amending the complaints to add actual personal injury claims—a possibility that exists in every case and thus is insufficient to trigger a duty to defend. *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 816 F. App'x 611, 615 (2d Cir. 2020) (recognizing that contrary rule would render duty to defend "essentially limitless"); *see C.A. Fielland, Inc. v. Fid. & Cas. Co. of N.Y.*, 297 So. 2d 122, 127 (Fla. Dist. Ct. App. 1974) (duty to defend could arise only "at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage").  Properly considering the actual Opioid Lawsuits—not some theoretical transfiguration of them—the district court correctly rejected Publix's coverage claims.  *See CVS*, 2025 WL 2383644, at *13 (opioid defendant could "tender a new claim for coverage" if "underlying lawsuits unexpectedly transform into ones alleging damage from specific and individualized bodily injury").

### C. Coverage For The Opioid Lawsuits Would Be Incompatible With Foundational Principles Of Insurance

Finding coverage for the Opioid Lawsuits would contradict not only precedent and policy language, but also the foundational objective of liability insurance:  to protect against risks that can be predicted and underwritten with reasonable certainty.  While Publix makes much of the fact that all-risk insurance like the Policies here provides "broad" and "comprehensive" coverage (OB29), the Florida Supreme Court has recognized that "an 'all-risk' policy is not an 'all loss'

32

policy," such that it "does not extend coverage for every conceivable loss." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016) (quotation omitted). Given that "[i]nsurance is not a general safety net for all dangers," courts "must avoid interpreting insurance coverage to exceed the limits of a policy's plain language, lest they risk disrupting the parties' intentions or the risk assessments underlying insurance generally." *Quest*, 57 F.4th at 566. That includes declining to construe policies as providing coverage that is "virtually impossible to underwrite." *Oak Park Calabasas Condo. Ass'n v. State Farm Fire & Cas. Co*., 137 Cal. App. 4th 557, 565 (Cal. Ct. App. 2006).

Reading policies like those at issue here to cover economic losses that are not based on proven liability for particular bodily injuries would raise exactly that concern. When coverage is limited to claims seeking recovery based on specific injuries to specific people, an insurer can feasibly evaluate the insured's conduct, assess the risk that conduct will cause physical harm to people it will directly affect, and estimate the risk-discounted costs of damages connected to those specific harms. By contrast, if coverage extends to suits by anyone who claims downstream economic losses with merely a but-for causal connection to physical harms, underwriters would need to identify not only the class of people that might suffer physical harm to themselves or their property from the insured's conduct, but also the entire universe of other people and entities that could suffer

downstream economic losses as a result. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc*., 782 F. Supp. 2d 1047, 1057 (C.D. Cal. 2011) (coverage for economic losses would impermissibly "expand[] the coverage of the policy so as to provide coverage for almost any liability where bodily injury is a factor"). Expanding coverage to such "remote consequences" would "make it very difficult for an insurer to estimate liability and thus fix a premium." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Mead Johnson & Co*., 735 F.3d 539, 547-48 (7th Cir. 2013); *see Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1025-27 (5th Cir. 1985).

The problem is especially acute here. Under Publix's theory, insurance companies could be forced to finance all manner of local government functions that address societal harms within the jurisdiction. *See Bloodworth*, 727 F. Supp. 3d at 1416 (observing that such an interpretation "would essentially mean that there is no limitation to the provision 'because of bodily injury'"). Unlike bodily injury claims, local governments' views as to the budgetary outlays appropriate to address societal problems are not subject to reasonable actuarial assessment. Imposing coverage for suits seeking to recover such outlays would create a windfall for insureds and threaten the availability of assets to pay claims arising from risks that have actually been underwritten. And premiums would necessarily rise to reflect the new risks of unpredictable and potentially unbounded

downstream economic losses.

In short, as the Ohio Supreme Court warned in *Acuity*, holding that "a duty to defend exists simply because a consequence of the alleged public-health crisis is bodily injury, regardless of the fact that the underlying parties do not seek damages because of any particular bodily injury sustained by a person," would be "an extraordinarily expansive view." *Acuity*, 205 N.E.3d at 474. The "potential floodgates it might open" ought to give courts "much pause." *Id.*[13]

## II.  PUBLIX'S CONTRARY ARGUMENTS LACK MERIT

Publix's coverage claim hinges on treating the attenuated, but-for causal connection between bodily injury and the damages sought in the Opioid Lawsuits as the kind of "direct causal connection" required by the policy text and Florida law. *Atkinson*, 525 So. 2d at 977. To substantiate that mistaken view, Publix relies on poorly reasoned cases, misreads key policy provisions, and distorts Florida law regarding the duty to defend.

### A.   Publix Fails To Establish The Requisite Connection Between Bodily Injury And The Damages Sought In The Opioid Lawsuits

Publix concedes, as it must, that a mere but-for causal connection between bodily injury and the damages sought in underlying suits does not suffice for

---

[13] Contrary to Publix's suggestion (OB45), it is appropriate for courts to consider broader consequences in construing policy language. *See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998) ("[I]nsurance policies will not be construed to reach an absurd result.").

coverage. OB29 n.7; *see supra* at 17-18. But Publix fails to grapple with the implications of that concession. It instead relies on allegations and claims in the underlying complaints that establish at most only an insufficient but-for connection.

Publix invokes the following features of the Opioid Lawsuits:

- Allegations that opioids cause bodily injury to people (OB14-15);

- Allegations that Publix caused bodily injury through conduct that contributed to the opioid crisis (OB30-31);

- Allegations that Cobb County suffered budgetary impact from "necessary and costly responses to the opioid crisis" (OB16-17);

- Allegations that some of Cobb County's expenditures in response to the opioid epidemic include, among other services, providing front-line emergency treatment and other forms of treatment (OB16-17, 31);

- Claims for "actual damages" in connection with a negligence cause of action; "abatement of the nuisance" in connection with a public nuisance cause of action, with abatement efforts including providing addiction treatment; and the establishment of a settlement fund for the State of Georgia for "prevention and treatment of opioid addiction and related disorders" (OB16-18, 31-32).

But as already explained, *see supra* at 30-31, these allegations do not

36

establish a direct connection between bodily injury and the general budgetary/economic losses claimed. As the Delaware Supreme Court recently put it, these allegations do not "demonstrate that the underlying plaintiff treated *an individual* with an injury *caused by the insured*," let alone seek compensation for any such costs of caring for "any specific, individualized bodily injury." *CVS*, 2025 WL 2383644, at *6-7 (quotation omitted). The bodily injuries referenced in the complaints and highlighted by Publix instead serve only to "explain[] and support[] the claims of the actual harm" sought to be redressed—the plaintiffs' "economic loss." *Cincinnati Ins. Co. v. Richie Enters. LLC*, 2014 WL 3513211, at *5 (W.D. Ky. July 16, 2014). These references accomplish that goal by providing the necessary "context," *Anda*, 90 F. Supp. 3d at 1315, that (1) explains why the opioid epidemic harms society at large, thereby creating a public nuisance, and (2) illustrates particular examples of the epidemic's budgetary effects. In other words, "the most particularized allegations" regarding bodily injury are "intended only to illustrate the economic losses suffered by the counties" rather than serving as the "basis of the claims." *In re CVS Opioid Ins. Litig.*, 301 A.3d 1194, 1213 (Del. Super. Ct. 2023), *aff'd*, 2025 WL 2383644; *see Acuity*, 205 N.E.3d at 468-69 (allegations "regarding the opioid-related overdoses, addiction, and injuries sustained by their citizens … provide context" for the claims); *Anda*, 90 F. Supp. 3d at 1314 (similar). Publix thus runs squarely up against this Court's observation

in *Pacific Employers Insurance Co. v. Cesnik*, 219 F.3d 1328 (11th Cir. 2000), that "the mere fact that bodily injury occurred is insufficient to trigger coverage" where there is no "actual claim for damages on account of th[e] injury," such that the requisite "connection between the damages sought and a covered bodily injury" is lacking, *id.* at 1331-32.

In short, the Opioid Lawsuits reference bodily injuries, but do not seek to recover for such injuries—they instead seek only to recover for economic losses that are at most connected remotely to bodily injuries only in a but-for sense. None of the features of the underlying complaints invoked by Publix actually seeks to establish liability for proven individual injuries, and thus none suffices to trigger coverage.[14]

Faced with that problem, Publix attempts to rewrite the underlying complaints. Publix asserts, for instance, that the Opioid Lawsuit plaintiffs "are seeking to recover the costs of treatment for thousands of people injured and treated over the course of more than decade in a single action rather than in thousands of individual actions." OB32-33. In other words, Publix treats the Opioid Lawsuits as aggregated individual actions, like class actions or mass

---

[14] Contrary to Publix's assertion, the district court did not impose any "requirements about what *types of plaintiffs* need to bring underlying claims." OB28 (emphasis added). The court instead correctly focused on the *types of claims* that can trigger coverage, i.e., claims that seek to impose liability for specific proven injuries, not for economic losses from generalized social harms.

joinders that bring together many claims "in a single action."  That characterization of the Opioid Lawsuits is decidedly inaccurate.  The Opioid Lawsuits do not contain a *single* claim for personal injury—let alone many such claims joined together.  Nor could they.  The Lawsuits do not and could not satisfy the requirements for joining individual personal injury claims, each of which here would involve different injuries, different products, different causal mechanisms, different contexts, and so on.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011) (Rule 23 class actions); *Daker v. Barnes*, 2024 WL 3373557, at *1 (11th Cir. July 11, 2024) (Rule 20 mass joinder).  The Opioid Lawsuits need not satisfy such requirements because *they are not seeking to recover for anyone's personal injuries*.  If they were, they would preclude individual personal injury claims, but they do not—allegedly injured individuals all retain their *own* claims for recovery, which some claimants have pursued in other actions.  *See*, *e.g*., First Amended Petition, *Strickland v. Purdue Pharm. Products, L.P, U.S.*, 1:21-op-45058 (N.D. Ohio Apr. 9, 2021) (ECF 1-1 at 17) (alleging "a personal injury claim for injuries and damages sustained by Warren Clay Strickland as a result of the negligence of the Defendants" in connection with "pr[e]scribing and filling prescriptions").

For these reasons, the Opioid Lawsuits cannot be understood as aggregated personal-injury claims.  *See CVS*, 2025 WL 2383644, at *8 (rejecting effort to

39

recharacterize opioid lawsuits as "derivative actions" for personal injury because "none of these claims seek recovery for an *individual*'s bodily injury"). They are instead exactly what they claim to be—suits seeking recovery for the governments' *own distinct injuries*, which are purely economic, and at best connected to bodily injuries only in the most attenuated and insufficient "but for" sense.

Publix eventually tumbles to the same conclusion, conceding that its position, "[p]ut simply," is that "if Publix could show no public nuisance existed because opioid medication did not in fact cause injury, sickness or disease, or death, or that the plaintiffs did not incur costs in connection with those injuries for which they are seeking damages, the Opioid Lawsuits would fall apart." OB33. Far from being "proof positive" of a "direct causal connection," as Publix would have it (*id.*), Publix's own summary of its position describes only a but-for causal connection between its potential liability and bodily injury to unknown third parties. And the parties agree that a but-for connection does not suffice for coverage.

### B. Publix Relies On Unpersuasive And Inapposite Cases

Publix misleadingly asserts that courts have "split virtually equally" on the question whether opioid lawsuits seek damages "because of bodily injury." OB4. Publix ignores that the vast majority of *appellate* precedents rejects its position. In any event, none of the decisions cited by Publix withstands scrutiny, and Publix's

40

critiques of the better-reasoned decisions discussed above all miss the mark.

     1.     _Publix's Argument Rests On Flawed And Discredited Decisions_

Publix heavily relies on the only appellate decision to have endorsed its theory—the Seventh Circuit's decision in _Cincinnati Insurance Co. v. H.D. Smith, L.L.C._, 829 F.3d 771 (7th Cir. 2016). But as other courts have recognized, _H.D. Smith_ rests on a nonexistent distinction between "for bodily injury" and "because of bodily injury," _see Quest_, 57 F.4th at 564; _Acuity_, 205 N.E.3d at 470, and it ignores key policy language—discussed above, _supra_ at 24-25—focused on specific injuries to specific persons, _see Acuity_, 205 N.E.3d at 470-71.

_H.D. Smith_ also relies heavily on a hypothetical that actually shows why coverage does _not_ apply here. The court analogized government opioid lawsuits to claims by a mother seeking reimbursement for costs she incurred while caring for her injured child. 829 F.3d at 774. According to _H.D. Smith_, the mother's damages would be covered even though they represented her own economic loss, not compensation for the child's injury itself. _Id_.

That analogy has been consistently rejected in recent appellate decisions, which recognize that the hypothetical mother "still would have to prove the existence of her child's injuries to recover her caregiving costs, while the underlying plaintiffs here do not." _Quest_, 57 F.4th at 564. "Unlike the hypothetical mother," that is, "the governments in the underlying suits do not tie

41

their alleged economic losses to particular bodily injuries sustained by their citizens but to the aggregate economic injuries they have experienced because of the opioid epidemic." *Acuity*, 205 N.E.3d at 473; *accord Rite Aid*, 270 A.3d at 253 (liability insurer "would be liable for the mother's costs under a bodily injury provision only if the harm was the immediate and direct result of her child's personal injury," and government plaintiffs do not seek to prove such immediate and direct connection); *CVS*, 2025 WL 2383644, at *12 (same). *H.D. Smith*'s analogy, in short, simply illustrates the proper application of the "any person or organization" proviso to derivative-type claims for economic losses like the mother's medical-expense payments, *see* 57B Am. Jur. 2d *Negligence* § 954 (2023 ed.) (suits "for medical expenses paid on behalf of an injured spouse or child are derivative" (footnotes omitted)), while confirming that the proviso does *not* apply to claims for economic losses untethered to proven liability for such specific injuries.[15]

For the same reasons, Publix derives no support from trial court decisions

---

[15] In contrast to *H.D. Smith*, two other Seventh Circuit precedents discussed above—*Momence* and *Medmarc*—correctly reject coverage for lawsuits causally connected to third-party bodily injuries, where the plaintiffs were not suing to recover compensation for those injuries. *See supra* at 22-23. *H.D. Smith* inexplicably ignores *Momence*, and it mischaracterizes *Medmarc* as not involving a "claim of bodily injury in any form," 829 F.3d at 775 (quoting *Medmarc*, 612 F.3d at 616). In context, the statement from *Medmarc* refers to the absence of any claimed bodily injury *to the plaintiff*, which is precisely why it rejected coverage. *See* 612 F.3d at 616.

that uncritically adopted *H.D. Smith* without recognizing its flaws.  *See Giant Eagle, Inc. v. Am. Guar. & Liability Ins. Co*., 499 F. Supp. 3d 147, 166 (W.D. Pa. 2020), *vacated on other grounds*, 2021 WL 6276267 (W.D. Pa. May 25, 2021); *AmerisourceBergen Drug Corp. v. ACE Am. Ins. Co*., 2020 W.V. Cir. LEXIS 3 (W. Va. Cir. Ct. Nov. 23, 2020).  Those decisions also suffer from their own flaws: *Giant Eagle* endorses a "but for" causation standard incompatible with the policy text and Florida law, *see* 499 F. Supp. 3d at 166, and both decisions rely heavily on the since-reversed trial court decisions in *Rite Aid* and *Acuity*, *see id.* at 165-66; *AmerisourceBergen*, 2020 W.V. Cir. LEXIS 3, at *19.

As for *AIU Ins. Co. v. McKesson Corp*., 598 F. Supp. 3d 774 (N.D. Cal. 2022), *aff'd on other grounds*, 2024 WL 302182 (9th Cir. Jan. 26, 2024), that decision's analysis of the "because of" issue is likewise riddled with flaws.[16] *McKesson*'s reasoning is predicated on a misunderstanding of the "any person or organization" provision.  In that court's view, that provision was triggered merely by allegations that government plaintiffs had to "bear costs."  598 F. Supp. 3d at 785-86.  But the court failed to recognize that none of the allegations it cited addressed costs incurred to provide care to a specific person for a specific injury,

---

[16] The *McKesson* court ultimately reached the correct outcome by rejecting coverage on other grounds, *id.* at 798-99—a determination upheld by the Ninth Circuit without reaching the "because of" issue.  *McKesson*, 2024 WL 302182, at *4.

as the provision requires. *See supra* at 25-26. The *McKesson* court side-stepped that problem by instead attacking the strawman argument that coverage was unavailable merely because the government plaintiffs did not themselves suffer bodily injury. 598 F. Supp. 3d at 786. As explained, *see supra* at 28-32, 35-40, coverage is unavailable not because of the identity of the plaintiffs, but because of the nature of the claims—a claim by a plaintiff that did not itself suffer bodily injury *could* trigger coverage, but only if the claim was truly derivative of an individual injury that had to be proven for recovery. *McKesson*'s failure to recognize that distinction drains it of persuasive value.

Next, Publix invokes *Walmart Inc. v. ACE Am. Ins. Co*., 2023 WL 9067386 (Ark. Cir. Ct. Dec. 29, 2023), a trial court decision currently under review by the Arkansas Court of Appeals. That decision has no application here because it explicitly equates the terms "arising from" and "because of." Specifically, it proceeds from the premise that "[w]here the basis of the insured's liability *arises from* alleged bodily injuries or property damage, the lawsuit is *because of* or on account of those bodily injuries or property damage." *Id.* at *6 (emphasis added; internal quotation marks and alterations omitted); *see id.* at *7 ("lawsuits that *arise from* bodily injuries … are *because of*…those injuries" (emphasis added; internal

quotation marks omitted)).[17]  That reading is not only incorrect as a matter of plain meaning, but is also flatly inconsistent with Florida law, which draws a sharp distinction between the two phrases.  *See supra* at 17-18.

In short, each of Publix's opioid coverage decisions is unpersuasive.[18]  And so are the decisions it cites involving public-nuisance suits against gun manufacturers:  *Scottsdale Insurance Co. v. National Shooting Sports Foundation*, 2000 WL 1029091 (5th Cir. 2000), and *SIG Arms Inc. v. Employers Insurance of Wausau*, 122 F. Supp. 2d 255 (D.N.H. 2000).  *Scottsdale* erroneously treats a mere but-for connection as sufficient to trigger coverage.  *See* 2000 WL 1029091, at *2 (finding duty to defend because "[t]he complaint alleges that because of the bodily injuries to its citizens, the City of New Orleans had to incur additional costs").  *Scottsdale* also asserts that the insurer should have "explicitly limited coverage" to "damages incurred because of bodily injury *to the plaintiff* seeking damages," *id.* (emphasis added), but adding that qualifier would erroneously eliminate coverage for the derivative-type claims the Policies do cover.

*SIG Arms* is equally unhelpful.  That decision rested on the "any person or

---

[17] Publix attempts to minimize this aspect of *Walmart* as a mere "reference" to the term "aris[ing] from" (OB38), but it is the foundation for *Walmart*'s analysis.

[18] Publix's reliance on the dissenting opinions in *Rite Aid* and *Acuity* is even further afield.  Those opinions did not prevail in those cases, for good reason:  each fails to carefully parse the language of the policies and instead echoes the errors discussed above, including misplaced reliance on *H.D. Smith*.

organization" provision, but its quotation of the provision omitted the key phrases "the bodily injury" and "at any time."  122 F. Supp. 2d at 260.  As a result, the court misconstrued the provision as supporting coverage, when it actually confirms the absence of coverage for the reasons shown above, *supra* at 25-26.  Confirming *SIG Arms*'s outlier status, a decision from the same district, also applying New Hampshire law, recently deemed the analysis in *Quest*, *Acuity*, and *Rite Aid* "persuasive" and rejected coverage where "allegations about bodily injury" were "pled to support the underlying claim for damages because of fraud, not because of bodily injury."  *Liberty Mut. Fire Ins. Co. v. SoClean, Inc.*, 2024 WL 1193823, at *2, 5-6 (D.N.H. Mar. 6, 2024).

This Court should give no weight to *Scottsdale* or *SIG Arms.*  If gun-manufacturer precedents are relevant at all (given the wealth of other precedent more closely on point), the Court should rely on the better-reasoned cases rejecting coverage for such suits on grounds consistent with Florida law.  *See TIG v. Andrews Sporting Goods, Inc.*, 2002 WL 1293043, at *3 (Cal. Ct. App. June 12, 2002) (unpublished) (rejecting coverage because "the actual relief afforded in the underlying action would not be to compensate any victims injured by gun violence"); *Mass. Bay Ins. Co. v. Faber Bros., Inc.*, 2007 WL 1029366, at *3 (D. Ill. Mar. 30, 2007) (no coverage because the governmental plaintiff was "not seeking damages for personal injuries" and "the bodily injuries and property

damage mentioned in the underlying complaint are only evidence of the problems caused by [the gun distributor's] activities").

 2. *Publix Fails In Its Efforts To Distinguish Or Critique The Better-Reasoned Precedents That Reject Coverage For Opioid Suits*

Publix's objections to the decisions rejecting coverage for opioid lawsuits largely restate Publix's own flawed analysis. As to *Rite Aid*, for instance, Publix contends that the decision erred in citing the Seventh Circuit's decisions in *Medmarc* and *Momence*, because they were later distinguished by the Seventh Circuit in *H.D. Smith*. OB43. But as explained above, *H.D. Smith* actually ignored *Momence* and mischaracterized *Medmarc*. *See supra* at 42 n.15. *Rite Aid*'s rejection of *H.D. Smith* in favor of the earlier precedents is thus both internally consistent and eminently correct.

Publix's criticism of *Acuity* and *Quest* fares no better. Publix objects to their observation that the underlying suits' allegations regarding bodily injury "merely 'provide context' for the public nuisance and other causes of action." OB44. But as shown above, *see supra* at 37, that is precisely what these allegations do. Publix offers no substantive argument to the contrary.

Nor is there merit in Publix's efforts to diminish the force of *Anda.* Publix's primary contention is that this Court somehow overruled *Anda* when it affirmed the decision based on an exclusion that barred coverage. Nonsense. This Court expressly "decline[d] to reach the question of whether the State's claims in the

[opioid lawsuit] are 'for' or 'because of'" bodily injury, because answering that question was unnecessary to resolve the appeal.  *Anda*, 658 F. App'x at 958; *see id.* at 959 (concluding "that all the underlying claims, *if covered at all*, are embraced" by policy exclusions (emphasis added)).  According to Publix, Florida law allowed this Court to address the exclusion only if it first decided there was "coverage under the insuring agreement in the first instance."  OB42.  Not so.  As this Court has previously explained, Florida law does *not* treat "ruling on the main coverage grant" as "a necessary predicate to considering potentially applicable exclusions." *Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC*, 731 F. App'x 920, 923 (11th Cir. 2018).  Courts accordingly are not "barred from assuming arguendo that a claim falls within the main coverage grant and proceeding to analyze potentially relevant exclusions."  *Id.*  Even more to the point, that practice is also permissible under *California* law, which governed the policies still remaining in the case by the time *Anda* was on appeal, as Publix acknowledges.  OB37 n.9; *see Anda*, 658 F. App'x at 958; *Chicago Title Ins. Co. v. St. Paul Mercury Ins. Co.*, 2011 WL 6276097, at *10 n.9 (Cal. Ct. App. Dec. 16, 2011) (unpublished) (under California law, courts "may assume, without deciding, that the claims asserted are covered by the Policy and conclude the exclusion applies").  This Court thus was free in *Anda* to resolve coverage based on the exclusion without taking a position on the threshold coverage issue, as it did.  That approach was all the more logical given

*Anda*'s procedural posture:  the policies without the exclusion were no longer at issue in the case by the time of the appeal, offering this Court an efficient means of resolving the entire dispute that had not been available to the district court.  *See Anda*, 658 F. App'x at 957.

Publix's other gripes with *Anda* are no more convincing.  The *Anda* court did not err in relying  on *Richie*—a carefully reasoned Western District of Kentucky case that was expressly adopted by *Rite Aid* and *Acuity* and impliedly upheld by the Sixth Circuit in *Quest*.  *See Rite Aid*, 270 A.3d at 248; *Acuity*, 205 N.E.3d at 469.  Publix's only criticism of *Richie* is that it relied on *Medmarc*, which is a feature, not a bug.  *See supra* at 22-23, 42 n.15.

Publix also asserts that *Anda* is distinguishable because "most of the policies" involved the language "*for* 'bodily injury'" rather than "*because of* 'bodily injury.'"  OB41.  Again, Publix is mistaken.  The *Anda* court *did* expressly consider "because of" language, and its analysis applies fully here.  In any event, Publix cites no Florida precedent distinguishing between the two terms—terms which, as noted, *see supra* at 15 n.9, are used interchangeably in the ACE Policy.  *See Acuity*, 205 N.E.3d at 470 (finding no "case in which Ohio courts have made the distinction" between "because of" and "for" and emphasizing the interchangeability of the terms within the policies before it).

Finally, Publix fails to distinguish *Bloodworth*.  Publix urges this Court to

discount *Bloodworth* because that court considered the effect of the term "occurrence" in the course of analyzing the "bodily injury" provision. Yet *Bloodworth* conducted a straightforward analysis of the policy language and correctly determined that the phrase "because of bodily injury" "only covers damages sought for particular bodily injury, or damages that directly resulted from a particular physical bodily injury." 727 F. Supp. 3d at 1414. To be sure, the court held that the policy's requirement that "the 'bodily injury'" be "caused by an 'occurrence'" reinforced that conclusion. *See Bloodworth*, 727 F. Supp. 3d at 1407, 1415. But that analysis applies equally here, *see supra* at 24-25, 27-28—it does nothing to distinguish *Bloodworth* from this case.

### C.    Publix Misunderstands The Policy Provisions It Invokes

Compounding its errors, Publix misconstrues each of the policy provisions on which it relies.

1. Publix accuses the district court of ignoring the "any person or organization" provision by supposedly declaring that "government entity and hospital" plaintiffs are "outside the Policies' coverage." OB50. The district court did no such thing. As explained above, *see supra* at 38 n.14, the district court focused not on the identity of the plaintiffs, but on the nature of the claims, which fall outside the Policies' coverage because they do not seek damages that compensate for specific bodily injuries. As also explained above, the "any person

or organization" provision does not apply to such claims because the provision requires allegation and proof of injuries to a specific person, i.e., the injured person whose care the derivative claimant paid for. The provision's purpose—which Publix ignores—is to clarify the timing rule for such derivative claims by providing that the care may result "at any time" from "*the* bodily injury." It certainly does not exist to expand coverage to all economic-loss claims with only a but-for connection to bodily injury. *See supra* at 25-26; *Quest*, 57 F.4th at 566.

2. Publix also misconstrues the notice provision. As explained above, *see supra* at 27-28, by requiring the insured to provide detailed information about each claimant and their injuries, that provision underscores the requirement of particular bodily injury to identified individuals. Publix feebly notes that the provision only requires such specification "to the extent possible," but that caveat simply accounts for the possibility that in some cases insureds will not have access to all the detailed information specified in the provision by the time they must provide notice. The caveat does not remotely suggest that, as Publix would have it, the entire provision is categorically irrelevant to the kind of claims the policy covers.

3. Finally, Publix's arguments regarding exclusions are equally unpersuasive. First, Publix overreads the implications of the Policies' exclusion of certain pollution-related claims "by or on behalf of a governmental authority." OB51. As explained, because government entities *can* bring claims "because of"

51

bodily injury or property damage—either asserting their own property damage claims or derivative-type claims seeking to recover for specific injuries—the exclusions have an obvious purpose within the Policies consistent with the Insurers' reading.

Second, Publix even more grossly misstates the effect of opioid exclusions added to *later* policies by *some* Insurers. For starters, Publix acknowledges (OB11) that some Insurers did *not* add such exclusions, precluding any inference that can be generalized across all policies.

Further, Florida law is clear that "policy exclusions cannot create coverage where there is no coverage in the first place." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 740 (Fla. 2002). Publix says *Siegle* does not address an exclusion later added to similar policies (OB52), but the principle applies equally in that context, *see Cafe Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*, 536 F. Supp. 3d 1291, 1304 (S.D. Fla. 2021) (citing *Siegle* and collecting cases rejecting identical argument in context of virus exclusions added after COVID-19 pandemic), *aff'd*, 2022 WL 1510441 (11th Cir. May 13, 2022).

Finally, opioid exclusions serve important purposes no matter how the coverage grant is construed. Most obviously, they bar coverage for many claims even where the plaintiff himself suffered bodily injury from opioid use. OB12 (quoting exclusion language). Even as to government suits, it is common practice

in the insurance industry to add exclusions for substantial but uncovered risks, to avoid costly coverage litigation.  That is, insurers are always free to take a "belt and suspenders" approach to be "doubly sure" that they will not be subject to meritless coverage demands, like those asserted here.  *In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008); *see O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001) ("The fact that [the insurer] chose to make a clear policy provision more clear as a remedial measure to this litigation may not be used as evidence of an admission of either ambiguity or acceptance of [the insured's] interpretation of the policy.").

### D.    Publix's Arguments Based On The Breadth Of The Duty To Defend Are Meritless

Publix is obviously wrong when it suggests that the mere existence of this litigation *alone* creates a "possibility" of coverage that triggers the duty to defend. OB53.  A duty to defend does not exist merely because an insured's lawsuit says it does.  Publix also conflates the concept of "possibility of coverage" and the concept of ambiguity in policy language.  The first concerns the possibility that the insured will be found liable in the underlying case for a claim that would be covered under the policy.  The concept of ambiguity, by contrast, bears on the threshold question of whether a particular claim comes within the terms of the policy at all.  And contrary to Publix's submission, "an ambiguity is not present merely because the parties may differ as to interpretations of certain contract

53

provisions." *Pearson v. Caterpillar Fin. Servs. Corp.*, 60 So. 3d 1168, 1172 (Fla. Dist. Ct. App. 2011 (quotation omitted). Otherwise, an insured could create a "possibility of coverage" simply by insisting that coverage exists, however baseless the claim.

Nor does an ambiguity exist merely because some courts agree with Publix's flawed interpretation. OB49. Like disagreement between parties, "disagreement amongst courts does not necessarily indicate ambiguity." *Battery Web, Inc. v. Md. Cas. Co.*, 2006 WL 8431024, at *5 (S.D. Fla. Jan. 26, 2006); *see Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 379 F. App'x 906, 909 (11th Cir. 2010) (different courts interpreting policy language differently "does not necessarily mean that the language is ambiguous"). Were it otherwise, "one court's erroneous decision siding with an insured could create a split and force numerous other courts to compound the error." *Battery Web*, 2006 WL 8431024, at *5.

## III.    CERTIFICATION TO THE FLORIDA SUPREME COURT IS NOT NECESSARY

This case presents no open question of Florida law. The existing "decisions of the Florida courts," together with persuasive precedents from other jurisdictions examining identical policy language in identical circumstances, "provide sufficient and significant guidance as to how the Florida Supreme Court would rule on the issue." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999).

54

Certification to the Florida Supreme Court is accordingly unnecessary. *Id.* at 1254 n.2.

## CONCLUSION

The judgment should be affirmed.

Dated: August 20, 2025

Respectfully submitted,

/s/ *Jonathan D. Hacker*

Michael S. Shuster
Daniel M. Sullivan
Blair E. Kaminsky
Rebecca T. Moonitz
HOLWELL SHUSTER &
GOLDBERG LLP
425 Lexington Avenue
New York, N.Y. 10017
(646) 837-5151
mshuster@hsgllp.com
dsullivan@hsgllp.com
bkaminsky@hsgllp.com
RMoonitz@hsgllp.com

Laura E. Besvinick
CLYDE & CO. US LLP
1221 Brickell Ave, Suite 1600
Miami, FL 33131
(305) 329-1844
laura.besvinick@clydeco.us

Jonathan D. Hacker
Jenya Godina
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jhacker@omm.com
jgodina@omm.com

Robert Mangino
CLYDE & CO. US LLP
340 Mt. Kemble Avenue, Suite 300
Morristown, N.J. 07960
(973) 210-6700
robert.mangino@clydeco.us

Susan Koehler Sullivan
CLYDE & CO. US LLP
355 S. Grand Ave, Suite 1400
Los Angeles, CA 90071
(213) 358-7600
susan.sullivan@clydeco.us

*Attorneys for Defendant-Appellee ACE Property & Casualty Insurance Co.*

Kathryn Guinn
DENTONS US LLP
1900 16th Street, Suite 1350
Denver, CO 80202
(303) 634-4000
katy.guinn@dentons.com

*Attorney for Defendants-Appellees*
*Indian Harbor Insurance Company and*
*XL Insurance America, Inc.*

Karen M. Dixon
Rebecca C. Dunn
SKARZYNSKI MARICK & BLACK LLP
500 W. Madison Street, Suite 3600
Chicago, IL 60661
(312) 946-4200
kdixon@skarzynski.com
rdunn@skarzynski.com

Melissa A. Gillinov
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Suite 1000
Coral Gables, FL 33134
(305) 428-5063
mgillinov@hinshawlaw.com

*Attorneys for Defendants-Appellees*
*American Guarantee and Liability*
*Insurance Company and Steadfast*
*Insurance Company*

John D. Russell
Kaylee M. Chabarek
STOLER RUSSELL KEENER VERONA P.A.
One Tampa City Center, Suite 3100
201 North Franklin Street
Tampa, FL 33602
(813) 609-3200
jrussell@stolerrussell.com

James N. Hurley
FOWLER WHITE BURNETT, P.A.
Brickell Arch, 14th Floor
1395 Brickell Avenue
Miami, FL 33131
(305) 789-9200
jhurley@fowler-white.com

Bryce L. Friedman
Joshua C. Polster
Matthew C. Penny
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
(212) 455-2000
bfriedman@stblaw.com
joshua.polster@stblaw.com
matthew.penny@stblaw.com

*Attorneys for Defendant-Appellee St.*
*Paul Fire & Marine Insurance*
*Company*

Melissa A. Gillinov
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Suite 1000
Coral Gables, FL 33134
(305) 428-5063
mgillinov@hinshawlaw.com

Adam H. Fleischer
Joshua A. Boggioni
Kevin F. Harris
BATESCAREY LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
(312) 762-3100
afleischer@batescarey.com
jboggioni@batescarey.com
kharris@batescarey.com

kchabarek@stolerrussell.com

William C. Joern
Douglas M. DeWitt
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Ave., Suite 3400
Chicago, IL 60647
(312) 784-5400
wjoern@hww-law.com
ddewitt@hww-law.com

*Attorneys for Defendants-Appellees
National Surety Corporation and
Fireman's Fund Insurance Company*

James P. Ruggeri
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
1875 K Street, Suite 800
Washington, D.C. 20006-125
(202) 984-1400
jruggeri@ruggerilaw.com
arolain@ruggerilaw.com

Pedro E. Hernandez
Daniel C. Shatz
HINSHAW & CULBERTSON LLP
2811 Ponce de Leon Blvd, Floor 10
Coral Gables, FL 33134
(305) 358-7747
phernandez@hinshawlaw.com
dshatz@hinshawlaw.com

*Attorneys for Defendants-Appellees
Hartford Fire Insurance Company,
Navigators Specialty Insurance
Company, and Twin City Fire Insurance
Company*

*Attorneys for Defendants-Counter
Claimants-Appellees Great American
Assurance Company, Great American
Insurance Company of New York, and
Great American Spirit Insurance
Company*

Matthew J. Lavisky
Latasha Scott
BUTLER WEIHMULLER KATZ CRAIG,
LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
(813) 281-1900
mlavisky@butler.legal
lscott@butler.legal

Robert A. Kole
John C. Calhoun
CHOATE HALL & STEWART LLP
2 International Place
Boston, MA 02110
(617) 248-5000
rkole@choate.com

*Attorneys for Defendants-Appellees
Liberty Insurance Underwriters, Inc.,
Liberty Mutual Fire Insurance
Company, Liberty Surplus Insurance
Corporation, and the Ohio Casualty
Insurance Company*

Andrew L. Margulis
ROPERS MAJESKI PC
800 Third Avenue, 29th Floor
New York, N.Y. 10022
(646) 454-3242
andrew.margulis@ropers.com

Joel D. Adler
MARLOW, ADLER, ABRAMS, NEWMAN &
LEWIS
4000 Ponce de Leon Blvd, Suite 70
Coral Gables, FL 33146
(305) 446-0500
jadler@marlowadlers.com

*Attorneys for Defendant-Appellee
National Fire & Marine Insurance
Company*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 12,975 words. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

*/s/ Jonathan D. Hacker*
Jonathan D. Hacker

*Counsel for Defendant-Appellee ACE Property & Casualty Insurance Co.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of August, 2025, I electronically filed the foregoing with the Clerk of the Court using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

/s/ *Jonathan D. Hacker*
Jonathan D. Hacker

*Counsel for Defendant-Appellee ACE Property & Casualty Insurance Co*.